## Richmond

### ROBERT L. BOWERS

### v.

### COMMONWEALTH OF VIRGINIA, DEPARTMENT OF HIGHWAYS AND TRANSPORTATION, ET. AL.

April 29, 1983.

Record No. 801654.

Present: Carrico, C.J., Cochran, Poff, Compton, Stephenson, and Russell, JJ., and Harrison, Retired Justice.

*B. L. Dunford-Jackson (B. Waugh Crigler; Davies, Crigler, Barrell & Will, P.C.,* on brief), for appellant.

*John G. Douglass (E. Suzanne Darling, Assistant Attorney General; H. Slayton Dabney, Jr.; McGuire, Woods & Battle,* on briefs), for appellees.

CARRICO, C.J., delivered the opinion of the Court.

This appeal in a personal injury case involves a plea of sovereign immunity. The case was commenced when Robert L. Bowers filed a motion for judgment against the State Department of Highways and Transportation (the Department), Daniel J. Marston, who was the Department's resident engineer in Culpeper, and Joseph F. Older and Mabel I. Older. In the motion, Bowers alleged he was injured as a result of the defendants' negligence when he fell through a culvert-type bridge the Department had constructed on property Bowers leased from the Olders.

In response, the Department and Marston filed a motion to dismiss on the ground they were immune from liability for the negligence alleged against them. By final order entered August 13, 1980, the trial court sustained the motion and dismissed the Department and Marston from the proceeding.[1]

The record shows that Bowers leased the property in question from the Olders in the early part of 1975. The driveway to the residence led from State Route 611 across a stream which was spanned by a one-pipe culvert constructed by the Olders before Bowers leased the property.

After this culvert was installed, Marston began receiving complaints concerning the flooding of Route 611 in the area. Believing

---

[1] By order entered July 22, 1980, Bowers nonsuited his claim against the Olders.

that the culvert contributed to the flooding problem, Marston made plans to improve Route 611 and, as a part of the project, to upgrade the culvert on the Older property.

The Department obtained from the Olders and other owners of property adjoining Route 611 agreements to donate the land necessary for the road improvement project. As part of its understanding with the Olders, the Department agreed to replace the culvert on their property. Completed in the spring of 1976, the new culvert consisted of two parallel concrete pipes, a covering of gravel, and "aggregate bag head walls."

On October 9, 1976, during a heavy rainfall, Bowers was attempting to cross the culvert when it collapsed under the weight of his pickup truck. He stepped out of the truck and "went right straight down" through the gravel, sustaining the injuries for which he brought the present action.[2] The action sounded in simple negligence only and was based upon the general premise that the accident would not have occurred had the Department installed concrete headwalls, rather than "aggregate bag head walls," in the construction of the culvert.

With respect to his claim against Marston, Bowers contends first that Marston is not entitled to the protection of sovereign immunity because, "in taking the Department onto private property to perform the work that was indeed performed there," Marston exceeded his statutory authority. In such a case, Bowers submits, a rule stated in *Sayers* v. *Bullar,* 180 Va. 222, 22 S.E.2d 9 (1942), applies:

[T]he immunity of the State from actions for tort extends to State agents and employees where they are acting legally and within the scope of their employment, but if they exceed their authority and go beyond the sphere of their employment, or if they step aside from it, they do not enjoy such immunity when they are sued by a party who has suffered injury by their negligence.

[2] Because Bowers' claim accrued prior to July 1, 1982, the Virginia Tort Claims Act, Code §§ 8.01-195.1 to -195.8, does not apply to this case. The Act makes the Commonwealth liable for certain claims for damages caused by the negligent acts or omissions of state employees; however, the Act preserves the immunity of state employees "to the extent and degree that such persons presently are immunized." Code § 8.01-195.3.

180 Va. at 230, 22 S.E.2d at 13.[3]

Bowers maintains that only two statutes, Code §§ 33.1-13[4] and -201,[5] relate to Marston's authority and that neither authorized him to do the work he performed on private property here. Bowers points out that Code § 33.1-13, as it read at the time the new culvert was installed, gave the State Highway and Transportation Commissioner "plenary powers for construction, improving and maintaining the roads embraced in the systems of State highways." At no time, Bowers asserts, was it contemplated that the culvert constructed on private property in this case would become a part of the state highway system. And, Bowers submits, while Code § 33.1-201 permits the Department to perform work on pri-

---

[3] In *Sayers,* we affirmed the trial court's action in sustaining a plea of sovereign immunity in a case brought by a landowner against state employees for damages resulting from blasting conducted on state property.

[4] § 33.1-13. General powers of the Commissioner.—Except such powers as are conferred by law upon the State Highway and Transportation Commission, the State Highway and Transportation Commissioner shall have plenary powers for construction, improving and maintaining the roads embraced in the systems of State highways. And as executive head of the Highway and Transportation Department, the Commissioner is specifically charged with the duty of executing all orders and decisions of the Commission and he may, subject to the provisions of this chapter, require that all appointees and employees perform their duties under this chapter.

[5] § 33.1-201. Improving certain private roads and certain town streets and roads.—The State Highway Commissioner may, in his discretion, upon the request of the board of supervisors or other governing body of any county and at the expense of the owner of the land, improve private roads giving direct access from the home or other central buildings on the property along the shortest practical route to the nearest public highway; provided, however, that:

(1) The Commissioner shall in no case undertake any such work until certification is made by the board of supervisors or other governing body that the property owner cannot secure the services of a private contractor to perform the work nor then until the owner has deposited with him a certified check in the amount estimated by the Commissioner as the cost of the work;

(2) Not more than one thousand dollars shall be expended on any one such private project in any one year;

(3) No work of ordinary maintenance shall be done on any such private road under the provisions of this section.

And the Commissioner may, upon the request of the council of any town having a population of less than fifteen hundred, and at the expense of such town, improve and maintain any streets or roads therein not in the State Highway System. As to streets and roads in such town, no certification by the board of supervisors or deposit shall be necessary.

Any work done by the Commissioner pursuant to the provisions of this section shall only be done with the equipment and employees of the State Highway Commission.

vate property under certain conditions, those conditions were not present here.

We agree with Bowers that Code § 33.1-201 has no application here, and we also agree that the culvert in question was not intended to become a part of the state highway system. It does not follow, however, that Marston did not have the authority to go upon the Older property and construct the culvert.

Route 611 is a part of the state secondary system of highways. The project undertaken by the Department in this case was the improvement of Route 611. Incidental to the satisfactory completion of that project and pursuant to the plenary powers granted by Code § 33.1-13, it was proper for Marston to go upon private property, with the consent of the owners, to remedy one of the conditions necessitating improvements to the state highway. Hence, we hold that Marston did not exceed his authority in constructing the culvert on the Older property.

Bowers next contends that, even though Marston may have acted within the scope of his authority, we should still hold him liable for his negligence in designing and installing the culvert. We should reach this conclusion, Bowers maintains, as a result of our recent decision in *James* v. *Jane,* 221 Va. 43, 282 S.E.2d 864 (1980).[6] As Bowers points out, we indicated in *James* v. *Jane* that where a state employee is alleged to have committed acts of simple negligence, even though he has acted within the scope of his authority, "it is appropriate to perform an analysis to see whether the doctrine of sovereign immunity will protect him." Bowers states that we have all the information we need to perform the "*James* v. *Jane* analysis" and that the exercise will "compel the same result" reached in that case, *viz.,* a denial of the protection of sovereign immunity.

*James* v. *Jane* involved malpractice actions against three physicians who were members of the faculty of the University of Virginia Medical School and also members of the medical staff of the University's hospital. In this latter role, the three doctors treated both "private" and "staff" patients, but their only compensation consisted of their faculty salaries. While they were required to follow certain guidelines in treating patients, the physicians exercised

---

[6] *James* v. *Jane* was decided June 6, 1980. The trial court announced its decision in the present case on June 9, 1980. It does not appear that our decision was called to the trial court's attention.

broad discretion in selecting methods of patient care and made the final decisions concerning diagnosis and treatment.

The trial court sustained the physicians' pleas of immunity. We reversed. Our decision, however, should not be considered, as Bowers appears to consider it, as removing the cloak of immunity from all state employees. Indeed, we stated that "[t]he only issue we decide here is whether a physician, employed by an agency of the Commonwealth of Virginia and practicing in a hospital operated by such an agency, should be immune from an action for his negligence, *i.e.*, for his failure to exercise reasonable care in attending a patient." 221 Va. at 55, 282 S.E.2d at 870. And, in the discussion that followed this statement, we made clear that the physicians were denied immunity because of the nature of the physician-patient relationship and the special undertaking, inherent in that relationship, to use reasonable care. *Id.*

In the course of the *James* v. *Jane* opinion, we listed certain factors to consider in determining whether a state employee is entitled to immunity when he or she is charged with simple negligence in the performance of some duty. We said:

Under such circumstances we examine the function [the] employee was performing and the extent of the state's interest and involvement in that function. Whether the act performed involves the use of judgment and discretion is a consideration, but it is not always determinative. . . . Of equal importance is the degree of control and direction exercised by the state over the employee whose negligence is involved.

221 Va. at 53, 282 S.E.2d at 869.

On the point concerning the employee's function and the state's interest in that function, Bowers argues that the state cannot say it has a more compelling interest in work performed on a private driveway than in work on a public roadway used by the general population. Here, again, Bowers would have us disregard the true nature of the work involved in this case. As noted previously, the work performed on private property was merely incidental to the primary purpose of the project, which was to improve a highway in the state's secondary system. It cannot be doubted that the state's interest in such a project is substantial.

Continuing with his argument, Bowers says that in assessing the state's interest in a particular function, it is relevant to consider

the degree to which the state treasury might be jeopardized if liability attaches. Bowers asserts that "there was liability insurance here to protect the very risks which caused [his] injury"; hence, "the only way" the state treasury could be imperiled is by an increase in liability premiums. Bowers maintains that *James* v. *Jane* indicates such an increase in premiums is an insufficient state interest "to justify extending the shield of sovereign immunity to [a state] employee . . . ."

Bowers, however, misconstrues the discussion in *James* v. *Jane* concerning liability insurance. We did not say that the potential increase in liability premiums was an insufficient state interest to justify extending the shield of immunity to a state employee. We said something quite different, *viz.,* that we did not find the potential increase "to be such a compelling state interest as to justify the denial [to] a patient [of ] the right to assert a claim against a physician for negligent treatment." 221 Va. at 54, 282 S.E.2d at 870.

In making this statement, we were emphasizing the nature of the physician-patient relationship and the special undertaking, arising from that relationship, to use reasonable care. Implicit in the statement is the recognition that the state has a greater interest in preserving a patient's right to pursue a malpractice claim against a physician than in the amount of liability premiums the physician might have to pay. This rationale is wholly inapposite here.

Concerning the remaining factor, *viz.,* employee discretion, Bowers maintains that his case is "on all fours" with *James* v. *Jane;* the physicians there had "complete autonomy and control," and Marston here had "complete discretion." Once again, however, Bowers misinterprets the *James* v. *Jane* opinion.

Our emphasis in *James* v. *Jane* upon the degree of autonomy and control retained by the physicians was not to demonstrate that they were disentitled to immunity because they exercised discretion, but to show that, unlike typical state employees, they were essentially private practitioners. We said that, while the doctors' state employment made possible the arrangement whereby they undertook to treat patients, "the relationship [became] the personal and confidential one of doctor and patient, not the Commonwealth of Virginia and patient." 221 Va. at 50, 282 S.E.2d at 867. In the doctor-patient relationship, we stated, "the patient expects, and has a right to expect, the same care and attention from

the physician that he would receive if he were in a private hospital and the physician in private practice." *Id.*

In the typical situation where a state employee has been charged with simple negligence, the presence of discretion traditionally has been one of the indicia of entitlement to immunity. Indeed, *James v. Jane* recognizes this proposition, but cautions that "it is not always determinative." 221 Va. at 53, 282 S.E.2d at 869.

Here, although Marston may have been vested with broad discretion, he did not have the "complete autonomy and control" the physicians possessed in *James v. Jane.* To say, as Bowers suggests, that Marston enjoyed absolute independence of decision and action, and that the Department retained little or no control over him or his work, is to ignore the reality that he is a subordinate employee of the Department and, by law, subject to the direction and control of the State Highway and Transportation Commissioner. Code §§ 33.1-8, -13.

Having performed the "*James v. Jane* analysis," we conclude that Marston was entitled to immunity from liability for the acts of negligence charged against him. This brings us to Bowers' contention that the state itself, in the form of the Department, "should not be allowed" the protection of the doctrine of sovereign immunity.

Bowers apparently recognizes that at least since the time we decided *Wilson v. State Highway Commissioner,* 174 Va. 82, 4 S.E.2d 746 (1939), the Department has been entitled to immunity from liability for the negligent acts of its officers and employees, committed in the performance of their duties. Bowers argues, nonetheless, that we should reverse the trial court's ruling granting the Department immunity in this case.

Bowers refers to "the developments in the law of sovereign immunity," which he characterizes as a "widespread movement . . . nationwide to curtail . . . or even to abrogate the doctrine." He says this court has attempted "over the years to curtail the doctrine," citing *James v. Jane* as an example.[7] Finally, he empha-

---

[7] On the same day we decided *James v. Jane,* we also decided *Freeman v. City of Norfolk,* 221 Va. 57, 266 S.E.2d 885 (1980) (upholding city's immunity from liability for alleged negligence in providing or failing to provide traffic lights and other traffic controls). Since then, we have decided *Banks v. Sellers,* 224 Va. 168, 294 S.E.2d 862 (1982) (upholding immunity of division superintendent of schools and high school principal from liability for alleged negligence in failing to provide a safe school environment), and *First*

sizes the General Assembly's 1981 passage of the Virginia Tort Claims Act, Code §§ 8.01-195.1 to -195.8, which, he states, "almost completely abrogated the doctrine of sovereign immunity."

Bowers, however, can gain little comfort from *James* v. *Jane* in his effort to induce us to remove the cloak of immunity from the state itself; there, we expressly reaffirmed the absolute immunity of the state from liability for the negligence of its officers and employees. 221 Va. at 53, 282 S.E.2d at 869. Neither can Bowers rely upon the Tort Claims Act for assistance because it took effect well after his claim accrued. To deny the Department immunity in this case on the strength of the statute's passage would make the provisions of the new law retroactive in application to a claim that accrued long before the date fixed for the law's effectiveness. We decline to intrude upon the legislative domain in this manner.

For the reasons assigned, we will affirm the judgment of the trial court.

*Affirmed.*

COCHRAN, J., dissenting.

The majority opinion is a constructive explication of the rationale and rule in *James* v. *Jane,* 221 Va. 43, 282 S.E.2d 864 (1980). However, the conclusion the majority reaches, while consistent with that reached by the majority in *Lawhorne* v. *Harlan,* 214 Va. 405, 200 S.E.2d 569 (1973), is irreconcilable with the unanimous opinions of this court in *Crabbe* v. *School Board and Albrite,* 209 Va. 356, 164 S.E.2d 639 (1968), and *Short* v. *Griffitts,* 220 Va. 53, 255 S.E.2d 479 (1979). In *Crabbe,* immunity was disallowed in a suit against a teacher by a student for injuries allegedly caused by the teacher's negligence during instruction in the use of a power saw. In *Short,* we reversed the trial court's dismissal under the immunity theory of a student's action against a school athletic director, baseball coach, and building and grounds supervisor for injuries resulting from their alleged negligence in maintaining the school track.

Nevertheless, in a later case, *Banks* v. *Sellers,* 224 Va. 168, 294 S.E.2d 862 (1982), we upheld the bar of immunity in an action by

*Virginia Bank* v. *Baker,* 225 Va. 72, 301 S.E.2d 9 (1983) (holding clerk of court not immune from liability for negligent misindexing by deputy). None of these decisions affects the outcome of the present case.

a student who alleged she was stabbed at school because of the negligent failure of a superintendent and a principal to provide a safe environment for her. Although the majority opinion in *Banks* summarized *Short* it did not explain satisfactorily to me why opposite results were justified in the two cases. This tendency of the majority to tiptoe around the fringes of sovereign immunity not only produces highly attenuated reasoning but leads to increasing uncertainty and confusion in the trial courts. I would reaffirm the sound principle enunciated in *Crabbe, James,* and *Short* that agents and employees of an immune employer are subject to liability for negligence in the performance of their duties. Therefore, I would reverse the judgment of the trial court and remand the case for trial on the merits.

POFF and STEPHENSON, JJ., join in this dissenting opinion.