748 F.2d 224
 Richard A. AUSLEY, Appellant,
v.
J.P. MITCHELL, Warden, Virginia State Penitentiary, Ray
Chavis, Recreational Department, Appellees.
William POOLE, III, Appellant,
v.
Edward C. MORRIS, Samuel V. Pruett, George L. Furgeson, Appellees.
 Nos. 82-6128, 82-6143.
 United States Court of Appeals,
Fourth Circuit.
 Argued Dec. 6, 1983.
Decided Nov. 16, 1984.
 
 Russell Williams, Third Year Law Student (Robert E. Shepherd, Jr., University of Richmond School of Law, Richmond, Va., Patricia L. Harrington, Third Year Law Student, on brief), Stephen Saltzburg, Charlottesville, Va., for appellants.
 James W. Hopper, Alan Katz, Asst. Atty. Gen., Richmond, Va. (Gerald L. Baliles, Atty. Gen. of Va., Richmond, Va., on brief), for appellees.
 Before WINTER, Chief Judge, and RUSSELL, WIDENER, HALL, PHILLIPS, MURNAGHAN, SPROUSE, ERVIN and CHAPMAN, Circuit Judges, sitting en banc.
 On Petition for Rehearing:
 WIDENER, Circuit Judge:
 
 
 1
 These two appeals were consolidated for argument from judgments in favor of defendants in actions under 42 U.S.C. Sec. 1983. We affirm.
 
 
 2
 Richard Ausley, while an inmate at the Virginia state penitentiary, was sent some art supplies by his family on November 18, 1980. The supplies were picked up by him from the prison package room. He was informed, however, that the art supplies could not be taken from the recreation building. As the art department claimed it did not have facilities to store the materials, Ausley was forced to leave them in the recreational day room, from which they disappeared. He sues for their value.
 
 
 3
 William Poole, III, when he arrived at the Mecklenburg Correction Center on August 6, 1979, was told that he could not keep some of his personal property. He requested that such property be sent to his sister, Lucille Whittaker. On August 14, 1979, Poole received a set of 47 books. He was informed that he could not keep the entire set, so, rather than break it up, he elected to send it to a certain Becky Shields. The property officer negligently sent to Miss Shields both the personal property intended for Poole's sister and also the books. Poole has not been able to obtain the return of his personal property and sues for its value.
 
 
 4
 There is no claim other than ordinary negligence asserted by either Ausley or Poole on account of the loss of their property, and its negligent loss states a Sec. 1983 deprivation of property claim under Parratt v. Taylor, infra, unless with due process of law.[1]
 
 
 5
 These cases are covered by a straightforward application of Parratt v. Taylor, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981); Phelps v. Anderson, 700 F.2d 147 (4th Cir.1983); First Virginia Bank-Colonial v. Baker, 225 Va. 72, 301 S.E.2d 8 (1983); and that part of Daniels v. Williams, 748 F.2d 229 (4th Cir.1984) (en banc), decided this date, which relates to this case.
 
 
 6
 The duties of the prison employees in both cases now before us were merely ministerial. The state employee in Ausley's case had no discretion but to use ordinary care to keep the art supplies for Ausley, and, in Poole's case, to send the property involved to Poole's sister. Thus, actions could have been brought in the Virginia courts for the value of the property lost. That being true, although Ausley and Poole were negligently deprived of their property, the deprivations were not without due process of law under Parratt v. Taylor.
 
 
 7
 A sufficient alternate reason for our decision is that the inmates had an administrative remedy by way of grievance. Phelps v. Anderson, supra.
 
 The judgments are accordingly
 AFFIRMED.[2]
 
 8
 HARRISON L. WINTER, Chief Judge, concurring in part:
 
 
 9
 In these two appeals, the principal question to my mind is whether Virginia affords a state-court state-law remedy for the property losses sustained by the two plaintiffs if they can prove their allegations of liability. Certainly Parratt v. Taylor, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), teaches that they have no cause of action under 42 U.S.C. Sec. 1983 if they have a state remedy. To my mind also, the question of whether there is a state remedy depends upon a determination of whether Virginia would recognize the defense of sovereign immunity if the defense is pleaded in a state tort action in a state court.[1] The very recent decision in Hudson v. Palmer, --- U.S. ----, ----, 104 S.Ct. 3194, 3204-06, 82 L.Ed.2d 393 (1984) strongly suggests that if sovereign immunity is available as a defense, the requirements of Parratt to oust Sec. 1983 jurisdiction would not be met.
 
 
 10
 The majority opinion concludes that Virginia would not recognize sovereign immunity as a defense were these actions pending in a state, and I am inclined to agree. In Palmer itself, the Court accepted the correctness of our statement that Palmer's claim for intentional destruction of his noncontraband property would not be barred by sovereign immunity if he asserted it in an action in a state court. We have also held in Phelps v. Anderson and Langford, 700 F.2d 147, 149 (4 Cir.1983), that an inmate's claim for wrongful deprivation of his television receiver, asserted against two prison officials who confiscated it improperly and failed to return it after he proved ownership, would not be barred by sovereign immunity.[2] Both in the majority opinion and in Phelps, we have deemed the touchstone of whether sovereign immunity may be successfully pleaded to be a factual determination of whether the state employee was performing a discretionary or a ministerial act when he gave rise to liability. If discretionary, he is immunized from liability by sovereign immunity; if ministerial, sovereign immunity is not available as a defense to personal liability.
 
 
 11
 The state precedents cited and discussed in the majority opinion and in Phelps certainly appear to stand for the proposition for which they are cited. There is, however, a later state decision, not mentioned by the majority, which I think at least raises the specter that we may not have correctly discerned the state of Virginia law. The case is Bowers v. Commonwealth of Virginia, Dept. of Highways & Transp., 225 Va. 245, 302 S.E.2d 511 (1983). That case held that the resident engineer of the highway department was entitled to assert sovereign immunity for his alleged negligence in the construction of a concrete culvert incident to improvement of a state highway. The unsettling aspect of the case is that it appears to scuttle the bright line test that sovereign immunity applies to discretionary acts but is not applicable to ministerial acts. Instead it is but "one of the indicia of entitlement to immunity." 302 S.E.2d at 515. In this regard, as the dissenters in Bowers point out, that decision gives new life to the conflict between two apparently divergent lines of Virginia authority with regard to the availability of sovereign immunity as a defense in a suit against a state employee for his alleged negligence. 302 S.E.2d at 516.
 
 
 12
 In short, recent developments have rendered the applicable Virginia law difficult if not impossible to predict with certainty.[3] Unfortunately, Virginia is a state that has no mechanism whereby we can certify the question and obtain an authoritative answer. I am persuaded by some of our past unsuccessful efforts to give authoritative and correct answers as to state law that we ought not overlook the possibility that once again we may not have made a correct prediction. We ought to afford plaintiffs some protection from an erroneous determination on our part.
 
 
 13
 While I would therefore affirm the judgments of the district court, I would require the district court to grant, as a condition of dismissal, leave to plaintiffs to reinstate their cases in the event that sovereign immunity is upheld as a defense to the prosecution in a Virginia court of any claim now pending or hereafter filed arising out of the facts and matters alleged in their complaints under Sec. 1983.[4]
 
 
 14
 Judge JAMES DICKSON PHILLIPS and Judge MURNAGHAN authorize me to say that they concur in this opinion.
 
 
 
 [1]
 Each of the courts below dismissed the complaints for the reason that Virginia law afforded a remedy for the property losses
 
 
 [2]
 The separate opinion argues that the recent case of Bowers v. Com. Dept. of Highways & Transp., 225 Va. 245, 302 S.E.2d 511 (1983), has introduced an uncertainty in the Virginia decisions respecting the immunity of state employees. It bases its reasoning principally on a quotation from Bowers that the distinction between discretionary acts (ordinarily immune) and ministerial acts (not ordinarily immune) is "but 'one of the indicia of entitlement to immunity,' " and describes the Bowers decision as a "recent development [...]." Bowers dealt with the act of a state employee which was admittedly discretionary
 While Bowers is a recent case, the rule is anything but in the context here. The quotation from Bowers seized upon is based upon James v. Jane, 221 Va. 43, 282 S.E.2d 864 (Va.1980).
 In the sought-for time sequence, the reliance on Bowers is misplaced. James was in place and decided well before our opinion in Phelps v. Anderson, 700 F.2d 147 (4th Cir.1983). Phelps held that Virginia afforded an adequate remedy in court for the negligent deprivation of use of a prisoner's television set by prison employees, and it depended explicitly upon the reasoning of James as authority for its holding, especially pages 50-55 of the Virginia Reports, Vol. 221, 282 S.E.2d 864. The employees' action complained of was a "simple ministerial act," 700 F.2d at 149, and the court did not read into James the doubt now expressed in the separate opinion. Indeed, we note that the quotation from Bowers, upon which the separate opinion relies, depends on page 53 of James in the Virginia Reports, 282 S.E.2d 864, squarely in the middle of those pages depended upon by this court in Phelps. It is apparent that Phelps simply does not construe James in the same manner as would the separate opinion, and as we do not construe either James or Bowers. We reiterate our confidence in the holding of Phelps. The very recent case of Messina v. Burden, --- Va. ---, 321 S.E.2d 657 (1984), is in accord with our conclusion.
 To repeat, in Phelps we construed Virginia law as imposing liability on a state employee for the negligent performance of a ministerial act. The acts complained of here are certainly ministerial. Even if Virginia law may not be "certain [...]," separate op. p. 3, as to the immunity of state employees for the negligent performance of discretionary acts, it is certain that state employees negligently performing ministerial acts are not entitled to immunity. See, e.g., Lawhorne v. Harlan, 214 Va. 405, 200 S.E.2d 569, 571-572 (1973).
 Along the same line, we held in Phelps that Virginia's grievance procedure "... also provided an adequate post-deprivation remedy for Phelps." 700 F.2d at 149. While the Department of Corrections, Division Guidelines, for the grievance procedure have been changed since the occurrence which caused the Phelps case, the new Guidelines are not less favorable to prisoners. They have been approved by the U.S. Attorney General under 42 U.S.C. Sec. 1997e. Since the prison grievance procedure is an adequate remedy, it affords sufficient due process to bar the claims. Thus, even were the separate opinion to be correct in its reasoning with respect to immunity, it also would be necessary to reject the holding of Phelps with respect to an adequate grievance procedure in order to arrive at the conclusion that it does, i.e., the dismissal of the claim should be conditional. No reason is apparent to us why there should be a conditional dismissal of the claim in the face of an adequate grievance procedure. Phelps' holding is to the contrary. See also Hudson v. Palmer, --- U.S. ----, ----, n. 15, 104 S.Ct. 3194, 3205, n. 15, 82 L.Ed.2d 393 (1984).
 In this connection, footnote 2 of the minority opinion apparently takes the position that relief in any event is discretionary under the Virginia grievance procedure, although the grievance may admittedly have merit, and cites as support a statement made by the Assistant Attorney General at oral argument indicating that the scope of relief available is "a matter of discretion and not a matter of right." We think the minority errs in relying on only part of the colloquy concerning the discretion involved in the grievance procedure. When counsel stated that awards were "a matter of discretion," he was responding to various questions from the court regarding the adequacy of any remedy the discretion to award which was placed in the hands of a prison official who might be interested in or even be a defendant in the lawsuit. The discussion between the court and counsel dealt with the objectivity of such a hearing officer and whether or not discretion ought to be entrusted to such an officer to decide whether to give an award and the amount thereof. Taken in the entire context of the discussion, contrary to what the minority suggests, we think the attorney was not responding to whether the grievance procedure permitted arbitrary denials of awards otherwise authorized. In fact, counsel maintained that the grievance procedure was itself an adequate postdeprivation remedy despite the possible role of a prison official as hearing officer because of the presumption that an official will perform his duty in a lawful manner and the availability of an appeal from the initial determination through various levels in the penal system.
 The discussion follows:
 Counsel: May it please the Court if I could just address the question of the availability of the state grievance procedure to Mr. Daniels. [As noted, Daniels' case was argued with these cases]. The grievance procedure which was recently certified by the United States Attorney General under the CRIP Act provides for possibility of monetary compensation for the loss of property. It has not been applied in a personal injury situation ... The grievance procedure as currently certified is essentially the same grievance procedure that was in effect prior to certification. And, even prior to certification, some compensation had been awarded to inmates for property losses. I believe they had awarded amounts up to $125.
 Court: There has been some suggestion that awards that are made are made in a way in which a court normally makes awards, on some independent objective factfinding determination. Here you have got one of the officials who may be one of the defendants in the lawsuit making the determination of how much money should be paid. That is hardly an adequate remedy in terms of objectivity and fairness.
 Counsel: Well, your Honor, I would submit that the grievance procedure has built into it various levels of appeals and it goes from the warden of the institution all the way up to the director ...
 Court: But the basis on which awards are made is discretion, not a matter of right?
 Counsel: I think that is a fair statement, your Honor, it is a matter of discretion and not a matter of right, based on all of the facts as they appear with some appeal process built into the system ...
 Court: Well, I just find it hard to say it is adequate when it is a matter of the discretionary determination of the prison official who is either himself or herself a defendant or has close connections with a person who is named as a defendant ...
 Counsel: Well, your Honor, I think we have to assume, and I think it is a correct assumption, that individuals are going to perform in a lawful manner. I think obviously this allegation that arises later that they didn't--a new cause of action has been stated and maybe that remedy is not adequate. But, until those facts are developed, or at least alleged, I think we must assume that prison officials will appropriately carry out their duties.
 From this colloquy, it is apparent that counsel did not intend to suggest that the grievance procedure permitted arbitrary denials of otherwise authorized awards. To begin argument, counsel discussed the current guidelines for the grievance procedure which were recently certified by the United States Attorney General and commented that these guidelines were essentially the same as those in effect prior to certification. The current guidelines which were in effect at the time of oral argument establish available remedies and explicitly provide, inter alia:
 4-14.5 ... The grievance procedure shall afford a successful grievant a meaningful remedy ... Remedies must include, but not be limited to, the following:
 (h) Loss of inmate property within the custody and control of the unit--return of property, replacement of property of equal value at time of loss, or monetary payment equal to value of property at time of loss.
 Department of Corrections Commonwealth of Virginia, Inmate Grievance Procedures (Feb. 14, 1983) (superseding prior certified guidelines issued Oct. 12, 1982).
 By comparison, the precertification guidelines in broader language provided "... inmates with an administrative method for the settlement of grievances they have relating to their confinement." They gave inmates "a regularly available channel for the expression of their grievances," and were to "foster prompt solutions." Authority to decide the same was specifically provided: "The Superintendent will have the necessary authority to resolve inmate complaints filed pursuant to this Guideline." An administrative appeal from the decision of the Superintendent was provided for. Department of Corrections Commonwealth of Virginia Inmate Grievance Procedure (March 31, 1977). Significantly, to repeat, we held in Phelps that the grievance procedure under the precertification guidelines provided an adequate postdeprivation remedy for an aggrieved inmate. 700 F.2d at 149.
 Implicit in counsel's reference to the current, as well as the precertification guidelines, is the fact that any award to an aggrieved party is based on the discretion of the factfinder in considering the merits of the complaint. We think counsel in no way suggested that discretion could be exercised arbitrarily to deny otherwise valid claims. Clearly, the basis for the awards under both the current and precertification guidelines would be an exercise of discretion on the part of the factfinder in addressing the merits of a complaint and, in this sense, awards would be a matter of discretion and not a matter of right. To the extent that the minority concludes from the statement of the attorney that awards are purely discretionary, thus implying that no adequate state remedy exists, it has failed to consider that, in addressing the issue of discretion involved in granting awards, the attorney obviously was responding that any award under the grievance procedure would be based on the discretion of the hearing officer in considering the merits of the complaint. This is no different than the way a federal district judge considers a case before him, or any other trial judge for that matter.
 
 
 [1]
 The record does not disclose if either plaintiff has instituted any action in a state court. In a companion case, consolidated for argument with these two appeals--Daniels v. Williams 748 F.2d 229 (4th Cir.1984)--plaintiff sued both in state and federal courts for personal injuries. In the state court action, defendant pleaded sovereign immunity while before us he contends that the defense is not available. Counsel for the defendants in his brief in these two cases argues that sovereign immunity will not be held to bar a state-court suit. Nevertheless, in oral argument he admits that he would advance a sovereign immunity defense in state court. Counsel's candor does not dispel the uncommendable inconsistency in his approach
 
 
 [2]
 As an alternative holding, Phelps said that the then Virginia grievance procedure provided a postdeprivation remedy to preclude Phelps' Sec. 1983 claim for damages for temporary deprivation of the use of his television set. Phelps was decided after the decisions of the district court in the instant cases but well before they were reargued in banc
 Phelps was not cited by the Commonwealth as a supplementary authority; and when the court inquired of counsel for the Commonwealth about the scope of relief available under Virginia's grievance procedure, we were told that awards are "a matter of discretion and not a matter of right." We were also told by counsel for plaintiffs that they had unsuccessfully sought redress for their claims under the Virginia grievance procedure. I would therefore decline to reach the issue of the effect of the Virginia grievance procedure on plaintiffs' right to maintain their actions in the district court.
 But even if the Virginia grievance procedure is to be considered, I think that, like the defense of sovereign immunity discussed in the text, the record is not sufficiently complete to hold unconditionally that the grievance procedures provide a postdeprivation remedy in these cases sufficient to foreclose plaintiffs' claims under Parratt. In my view, it is incumbent on the Commonwealth to offer proof demonstrating the availability and the complete efficacy of any postdeprivation remedy relied on to invoke the rule of Parratt. Short of such a showing, any dismissal of plaintiffs' complaints should be a conditional one.
 
 
 [3]
 We had occasion to express this conclusion in Fox v. Custis, 712 F.2d 84, 89 (4 Cir.1983). Further evidence of the expansion and confusion of Virginia's sovereign immunity defense is the Supreme Court of Virginia's recent decision in Hinchey v. Ogden, 226 Va. 234, 307 S.E.2d 891 (1983). In Hinchey, the court extended the doctrine to cover, not only actions at law for damages but also, suits in equity to compel or restrain action by government. Id. 307 S.E.2d at 894
 
 
 [4]
 This is essentially the course of action recommended in a thoughtful article, see K. Blum, The Implications of Parratt v. Taylor for Section 1983 Litigation, 16 The Urban Lawyer 363, 380-81 (1984)