# CIRCUIT COURT OF THE CITY OF CHARLOTTESVILLE

Brashear

v.

James Howard et al.

March 17, 1999

Case Nos. 98-167, 98-168

BY JUDGE EDWARD L. HOGSHIRE

In this personal injury action, the Defendant has moved to transfer venue to Albemarle County. For the reasons more fully articulated below, the Court denies the motion.

*Facts*

On May 18, 1998, during commencement exercises at the University of Virginia, the balcony of Pavilion I on the Lawn collapsed. Plaintiff, who was standing on the balcony, suffered various injuries, and his wife, who had accompanied him, was killed in the accident. As a result of the accident, Plaintiff brought suit in this Court against the University, James Howard (the Architect for the Historic Buildings and Grounds, and later Curator and Architect for the Academic Village), and ANADAC, Inc. (the engineering firm that reviewed Pavilion I).

Since this is a motion for transfer of venue, the parties have fought considerably over geography. There is no question that Pavilion I is located in Albemarle County and that Madison Hall, which houses the key administrators of the University, is located in the City of Charlottesville. A debate sparked as to the location of Mr. Howard's office, which the Defendants initially admitted was in the City but later corrected themselves and stated that it was in the

County. The parties vigorously dispute whether any "act or omission" occurred within the City of Charlottesville.

### Question Presented

Is it appropriate to transfer venue from the City of Charlottesville to Albemarle County?

### Discussion of Authorities

#### A. Statutory Analysis

Virginia Code §§ 8.01-260 through 8.01-262 establish the framework for assessing this venue question. Va. Code § 8.01-261 creates Category A or preferred venue. If none of the enumerated factors in that provision apply, then venue must be laid according to § 8.01-262, which describes Category B or permissible venue.

Two factors must be stressed at the outset. First, the statute explicitly provides that "if more than one preferred place of venue applies, any such place shall be a proper forum." Va. Code § 8.01-261. Since the actual accident occurred in Albemarle County, there is little question that Albemarle would be a preferred venue location within the meaning of the statute, as will be discussed later. The only question remaining, therefore, is whether Charlottesville is also a preferred venue location. If so, then the Defendant's motion must be denied.

The second factor is that the Defendant bears the burden of proof in this regard. "The party objecting to venue has the burden of establishing that the chosen venue is improper." *Meyer v. Brown*, 256 Va. 53, 57 (1998).

With those factors in mind, the Court proceeds to an analysis of the relevant subsections of § 8.01-261. The key section for this dispute is § 8.01-261(18)(b), which provides for venue in Virginia Tort Claims Act cases in "[t]he county or city where the act or omission complained of occurred."[1] The actual accident occurred in Albemarle County, which would make it a preferred location under the statute. Defendant argues, however, that the County is the exclusive location. The Defendant essentially reads § 8.01-261(18)(b) to mean that venue is proper only at the locus of an accident in a

---

[1] Because of its disposition of the motion, the Court need not address Plaintiff's alternative argument that venue is proper under § 8.01-261(2).

premises liability case. Defendant's argument, however, ignores the complexity of this case. In a simple automobile accident case, all of the acts or omissions would be isolated to the exact location of the accident. In a more complex case of this nature, however, the acts and omissions are not so readily confined.

## B. *Charlottesville Venue Based on Howard's Actions*

Plaintiff proffers two arguments about why venue should be proper in Charlottesville. First, he argues that Howard's negligence contributed to the accident. Seizing on the Defendant's admission that Howard's office is located in the City, he accordingly argues that venue is proper in Charlottesville. The Defendant, however, later retracted that admission and informed the Plaintiff that Howard's office was in fact located in the County. Although Plaintiff correctly notes that Defendant must make a motion to the Court under Rule 4:11(b) in order to amend its answer, the Court finds that the Defendant did make such a motion in its subsequent pleadings, and it grants the motion to amend. *See Defendant's Mem. in Support of Motion to Transfer Venue,* 3. Therefore, Plaintiff cannot obtain venue in Charlottesville based solely on Howard.

## C. *Charlottesville Venue Based on Sandridge's and Capone's Actions*

If the Plaintiff cannot obtain venue in Charlottesville based on Howard's actions, that of course begs the question of whether the Plaintiff can claim venue in Charlottesville through the actions of other University administrators, such as Vice Presidents Sandridge or Capone. The Defendant objected to the Plaintiff supplementing the record with documents uncovered in discovery, but in light of the fact that the Court granted Defendant's motion to amend its answer regarding Howard, fairness dictates that the Plaintiff be allowed to proffer these documents. The documents that Plaintiff presents are correspondence from Leonard Sandridge, Executive Vice President and Chief Financial Officer, and from Collette Capone, Vice President for Management and Budget. The Defendant has lodged several objections concerning reliance on these documents for the purposes of conferring venue.

First, Defendant objects because neither Capone nor Sandridge are named parties in the lawsuit. That fact does not preclude consideration of the correspondence; the University can only act through its agents. Even if certain

individuals are not named in a lawsuit, their actions can still have legal repercussions on their employer.

Second, the Defendant contends that these documents relate to the "budgetary nature" of Sandridge and Capone's decision-making and hence are shielded by the doctrine of legislative immunity. *See, e.g., Bowers v. Commonwealth*, 225 Va. 245 (1983). Assuming that the Defendant is correct that budgetary decisions are cloaked with immunity, it is well settled that immunity is functional. *See, Bogan v. Scott-Harris*, 118 S. Ct. 966, 973 (1998) ("We have recognized that officials outside the legislative branch are entitled to legislative immunity when they perform legislative functions."); *Kalina v. Fletcher*, 522 U.S. 118 (1997) (refusing to apply absolute prosecutorial immunity to prosecutor who was functioning as a complaining witness rather than as an advocate). That means that state actors may have immunity in some capacities, but not in others. Mr. Sandridge's scope of employment as Executive Vice President extends far beyond budgetary matters. The question thus becomes whether the Plaintiff has proffered evidence that falls outside the scope of budgetary decision making in this case. The Court is satisfied that he has. A memorandum dated January 21, 1991, from Sandridge to the Dean of the School of Nursing lists "repairs that need to be made on Pavilion 2." *Sandridge Memo.*, 1. This memorandum discussed in great detail renovations that should be made, such as "check[ing] all plumbing for good working order" and "replac[ing] all rotten wood and check for safety." *Sandridge Memo.*, 2. This memorandum illustrates the responsibility that Sandridge's office had over directing repairs in the Pavilions.

Defendant counters, however, that none of the documents expressly relate to Pavilion I, which is where the accident occurred. The above-referenced memorandum verifies, however, that Sandridge exercised some control over repairs for at least one of the Pavilions. It strains credulity to think that he would not likewise have such authority for Pavilion I. Given the breadth of the scope of Sandridge's job and the telling report in the memorandum, there is a reasonable inference that he had at least some responsibility for the upkeep of Pavilion I.

All of the above discussion concerns whether or not an "act or omission" occurred in Charlottesville. The Defendant has the burden of establishing that venue in the City of Charlottesville is improper, and the Court believes that it has failed to do so. Plaintiff alleges that the Commonwealth had a duty "to use ordinary care to maintain in a reasonably safe condition those portions of its buildings at the University ... that were reserved for common use of its faculty tenants and their guests." *Complaint*, ¶ 16. Plaintiff also alleges a breach of

that duty. *See Complaint,* ¶¶ 17-18. The Plaintiff has presented salient facts that could lead to a reasonable conclusion that some omissions occurred in Madison Hall which contributed to the alleged breach of duty. Although the Plaintiff cannot point to a proverbial "smoking gun," that does not harm him in resolving this issue. By establishing that administrators in Madison Hall had some hand in directing repair work on the Lawn but that no one took steps to avert the accident in question, then presumably some omissions occurred in Charlottesville.

Defendant asserts that such a holding will render the Commonwealth subject to suits throughout Virginia in cases such as this. The Court disagrees. The Plaintiff is not trying to obtain venue in the district of some lowly administrator who happened to take a tour of the Pavilion; rather, he has presented credible evidence that certain high-level administrators may have acted negligently regarding the maintenance of the Pavilion. Under the rule that if "more than one preferred place of venue applies, any such place shall be a proper forum," venue is proper in Charlottesville. The legislature certainly contemplated suits in which venue would be appropriate in several different locales, and it expressly included claims premised on the Virginia Tort Claims Act within the scope of this rule.

For the above-stated reasons, the Court denies the Defendant's motion to transfer.