### Richmond

FRANK MESSINA

v.

WILLIAM W. BURDEN

Record No. 811485.

LEONARD ARMSTRONG

v.

DENNIS R. JOHNSON

Record No. 820299.

October 12, 1984.

Present: Carrico, C.J., Cochran, Poff, Compton, Stephenson, Thomas, JJ., and Harrison, Retired Justice.

*H. Joel Weintraub (Decker, Cardon, Weintraub, Thomas & Hitchings,* on brief), for appellant. (Record No. 811485)

*J. J. O'Keefe, III (Outland, Gray, O'Keefe & Hubbard,* on brief), for appellee. (Record No. 811485)

*Blair D. Howard (Howard & Howard, P.C.,* on brief), for appellant. (Record No. 820299)

*Charles G. Flinn, County Attorney,* for appellee. (Record No. 820299)

THOMAS, J., delivered the opinion of the Court.

These two appeals present the same issue from slightly different perspectives. Both appeals concern whether the doctrine of sovereign immunity extends to government employees such as those involved in these cases. They differ in that William W. Burden, the appellee in the first appeal, was an employee of Tidewater Community College, part of the Virginia Community College System, and thus, in essence, an employee of the State, while Dennis R. Johnson, the appellee in the second appeal, was an employee of Arlington County. These appeals give us the opportunity to reexamine the complex law of sovereign immunity as it has evolved in the Commonwealth.

## I. *Background*

### A. *Messina*

In the first appeal, Frank Messina was injured when he tripped and fell on a stairway located behind the stage of the College Theater on the Frederick Campus of Tidewater Community College. At the time of his injury Messina was an actor in a play being performed at the theater.

Messina first sued the community college. However, that action was nonsuited and an amended motion for judgment was filed against William W. Burden, the college's superintendent of buildings.

In the amended motion for judgment, Messina made several allegations against Burden including the following:

> On or about March 11, 1979, the Defendant, William W. Burden, was the Superintendent of Buildings for the Defendant Tidewater Community College, was its employee, and was acting within the scope of his employment; and as the Superintendent of Buildings it was his duty to maintain and supervise the maintenance of the buildings of the Tidewater Community College. . . .

Burden filed a demurrer in which he contended that the action against him was barred by the doctrine of sovereign immunity. The court sustained the demurrer with leave to Messina to amend.

Messina filed a second amended motion for judgment. This time Messina was careful not to set forth Burden's job title. Moreover, in his new pleading, Messina did not allege that Burden was acting within the scope of his employment or that he had supervisory responsibilities. In response, Burden filed a plea of sovereign immunity. The court sustained the plea.

On appeal, Messina contends that the trial court erred in two particulars: first by sustaining the demurrer to the first amended motion for judgment, second by sustaining the plea to the second amended motion for judgment.

### B. *Armstrong*

Leonard Armstrong was injured when he stepped on a defective manhole cover located in a street in Arlington County. Armstrong sued Dennis R. Johnson and, in his motion for judgment, alleged

that Johnson was "Chief of the Operations Division of the Department of Public Works in Arlington County, Virginia." Johnson filed a special plea of immunity and a demurrer. Thereafter, the parties entered into a stipulation of facts in which they agreed that at the time of Armstrong's injury, Johnson was Chief of the Operations Division as alleged. They further agreed that there were eleven sections within Johnson's division and that he administered all of them. They also agreed that Johnson's work required the application of engineering knowledge and skills to solve highway construction and maintenance problems. They agreed further that Johnson had "wide latitude in exercising independent judgment, subject only to administrative review by the Director of the Department of Transportation."

The trial court sustained the demurrer and the plea of immunity. In a memorandum opinion, the trial court first stated that Arlington County shared the sovereign immunity of the Commonwealth, then reasoned that the county "is not a 'local government agency' as that term has been used in several of the decisions denying immunity to employees of such agencies." The trial court also stated that Johnson's duties were "analogous to the 'executive officers' in *Lawhorne* v. *Harlan* [214 Va. 405, 200 S.E.2d 569 (1973)] who were charged with the operation of a vast hospital complex." The court noted further that the charge against Johnson was one of simple negligence, not gross negligence or intentional misconduct.

On appeal, Armstrong contends that the trial court made two errors. He says the court erred in holding that Johnson "while acting as Chief . . . of Operations . . . was not acting as an employee of a local government agency." He also says the trial court erred in sustaining Johnson's demurrer and plea.

## II. *Discussion*

### A. *Issues Common to Both Appeals*

At least two common themes run through both appeals. One theme is that the doctrine of sovereign immunity has been so eroded that it has lost its vitality and should be done away with completely by this Court. The other theme concerns the difficulty in determining which government employees are entitled to immunity.

## 1. *Vitality of the Doctrine*

Contrary to the suggestions of the appellants, the doctrine of sovereign immunity is "alive and well" in Virginia. Though this Court has, over the years, discussed the doctrine in a variety of contexts and refined it for application to constantly shifting facts and circumstances, we have never seen fit to abolish it. Nor does the General Assembly want the doctrine abolished. In 1981, the General Assembly enacted the Virginia Tort Claims Act. Had it so chosen, the legislature could have used that act as a vehicle to abolish sovereign immunity. It did just the contrary. In a 1982 amendment to the Act the General Assembly provided as follows:

> [N]or shall any provision of this article . . . be so construed as to remove or *in any way diminish* the sovereign immunity of any county, city, or town in the Commonwealth.

Code § 8.01-195.3 (emphasis added). Thus, the complexity that exists in the law of sovereign immunity cannot be eliminated by the simple expedient of doing away with the doctrine by judicial fiat.

## 2. *Determining Employee Immunity*

The more important question raised by the two appeals is under what circumstances an employee of a governmental body is entitled to the protection of sovereign immunity. In order to resolve this question, we must focus upon what the doctrine of sovereign immunity was meant to achieve.

One of the most often repeated explanations for the rule of state immunity from suits in tort is the necessity to protect the public purse. *See Hinchey* v. *Ogden*, 226 Va. 234, 307 S.E.2d 891 (1983). However, protection of the public purse is but one of several purposes for the rule. In *Board of Public Works* v. *Gannt*, 76 Va. 455 (1882), we said that sovereign immunity is a privilege of sovereignty and we then explained that without the doctrine there would exist inconvenience and danger to the public in the form of officials being fearful and unwilling to carry out their public duties. We also stated that without sovereign immunity public service might be threatened because citizens might be reluctant to take public jobs. We said further that if the sovereign could be sued at the instance of every citizen the State could be "controlled

in the use and disposition of the means required for the proper administration of the government." 76 Va. at 462 (quoting *The Siren*, 74 U.S. (7 Wall.) 152, 154 (1868)).

More recently, in *Hinchey*, we rejected the idea that protection of the public purse is or ever was the sole basis of the doctrine. There, we said that while maintenance of public funds is important, another equally important purpose of the rule is the orderly administration of government. In *Hinchey*, we relied upon 72 Am. Jur. 2d *States, Territories, and Dependencies* § 99, which described sovereign immunity "as a rule of social policy, which protects the state from burdensome interference with the performance of its governmental functions and preserves its control over state funds, property, and instrumentalities." 226 Va. at 240, 307 S.E.2d at 894.

From these several sources it is apparent that the doctrine of sovereign immunity serves a multitude of purposes including but not limited to protecting the public purse, providing for smooth operation of government, eliminating public inconvenience and danger that might spring from officials being fearful to act, assuring that citizens will be willing to take public jobs, and preventing citizens from improperly influencing the conduct of governmental affairs through the threat or use of vexatious litigation. Given the several purposes of the doctrine, it follows that in order to fulfil! those purposes the protection afforded by the doctrine cannot be limited solely to the sovereign. Unless the protection of the doctrine extends to some of the people who help run the government, the majority of the purposes for the doctrine will remain unaddressed. For example, limiting protection to the State itself does nothing to insure that officials will act without fear. If every government employee is subject to suit, the State could become as hamstrung in its operations as if it were subject to direct suit. The reason for this is plain: the State can act only through individuals. *See Sayers* v. *Bullar*, 180 Va. 222, 22 S.E.2d 9 (1942).

At least twice in the past, we have acknowledged the importance of affording immunity to certain government employees. In one case we approached the question on the basis of policy:

> It would be an unwise policy to permit agents and employees of the State to be sued in their personal capacity for acts done by them at the express direction of the State, unless they depart from that direction.

*Sayers* v. *Bullar*, 180 Va. at 229, 22 S.E.2d at 12. To the same effect is *First Va. Bank-Colonial* v. *Baker*, 225 Va. 72, 79, 301 S.E.2d 8, 12 (1983), where we said that "government can function only through its servants, and certain of those servants must enjoy the same immunity in the performance of their discretionary duties as the government enjoys." *See* Note, *Virginia's Law of Sovereign Immunity: An Overview*, 12 U. Rich. L. Rev. 429 (1978).

There is very little debate regarding the extension of the doctrine to those who operate at the highest levels of the three branches of government. Governors, judges, members of state and local legislative bodies, and other high level governmental officials have generally been accorded absolute immunity. W. Prosser, *Handbook of the Law of Torts* § 132 at 987-988 (4th ed. 1971). General agreement breaks down, however, the farther one moves away from the highest levels of government. Nevertheless, on a case-by-case basis, this Court has extended immunity to other governmental officials of lesser rank.

In *Sayre* v. *The Northwestern Turnpike Road*, 37 Va. (10 Leigh) 454 (1839), we held the president and directors of the Northwestern Turnpike Road to be immune against a claim that a bridge built by their company was negligently constructed. In *Sayers* v. *Bullar*, 180 Va. 222, 22 S.E.2d 9 (1942), we held that workers who performed blasting operations for the State were immune from liability because there was no evidence that in blasting they did anything other than exactly what they were required to do by the sovereign. We stated that the "defendants were simply carrying out instructions given them by" a state agency. *Id.* at 230, 22 S.E.2d at 12. We said in *Sayers* that the workers "were acting solely in their representative capacity as lawful and proper agents of the State and not in their own individual right." *Id.* at 229, 22 S.E.2d at 12. In *Kellam* v. *School Board*, 202 Va. 252, 117 S.E.2d 96 (1960), we held that a city school board was immune when charged with negligence in failing to keep the aisles clear in a high school auditorium that had been rented to a third party for a program. *Accord Short* v. *Griffitts*, 220 Va. 53, 255 S.E.2d 479 (1979); *Crabbe* v. *School Board and Albrite*, 209 Va. 356, 164 S.E.2d 639 (1968).

In *Lawhorne* v. *Harlan*, 214 Va. 405, 200 S.E.2d 569 (1973), we held that two hospital administrators and a surgical intern at the University of Virginia hospital were immune in a suit brought by the representative of a patient who died while in the hospital.

In *Banks* v. *Sellers*, 224 Va. 168, 294 S.E.2d 862 (1982), we held that a division school superintendent and a high school principal were immune in a suit alleging that their failure to provide a safe environment resulted in plaintiff's being stabbed. In *Bowers* v. *Commonwealth*, 225 Va. 245, 302 S.E.2d 511 (1983), we held that a highway department resident engineer was immune from a suit where plaintiff sustained an injury on a culvert that was constructed by the highway department. Most recently we held that the Superintendent of the Norfolk-Virginia Beach Expressway was immune when sued for failing to provide adequate barriers and traffic control which led to a collision. *Hinchey* v. *Ogden*, 226 Va. 234, 307 S.E.2d 891 (1983).

Deciding which government employees are entitled to immunity requires line-drawing. Yet, given the continued vitality of the doctrine, the Court must engage in this difficult task. Yet, by keeping the policies that underlie the rule firmly fixed in our analysis, by distilling general principles from our prior decisions, and by examining the facts and circumstances of each case this task can be simplified.

### B. *Analysis of Messina and Armstrong*

*Messina* and *Armstrong* do not involve officials at the very highest levels of government who have generally been accorded absolute immunity. Thus, to decide the question of immunity in these appeals, we must make a close examination of the facts and circumstances.

### 1. *Messina*

In *Messina*, the trial court did not err in sustaining the demurrer to the first amended motion for judgment. In that pleading, Messina pleaded himself out of court. Messina alleged that the college was part of the Community College System, that Burden was employed by the college, that Burden was the "Superintendent of Buildings," that Burden had the "duty to maintain and supervise the maintenance of the buildings" at the college, and that Burden "was acting within the scope of his employment." It is clear from the first amended motion for judgment that Burden was a supervisory employee of the State of Virginia who was operating within the scope of his employment in doing or failing to do the act of simple negligence complained of by Messina; as such he

was entitled to immunity. *See Bowers* v. *Commonwealth*, 225 Va. 245, 302 S.E.2d 511 (1983); *Banks* v. *Sellers*, 224 Va. 168, 294 S.E.2d 862 (1982); *Lawhorne* v. *Harlan*, 214 Va. 405, 200 S.E.2d 569 (1973).

In support of his second assignment of error, Messina relies heavily upon *Short* v. *Griffitts*, 220 Va. 53, 255 S.E.2d 479 (1979). Messina contends that the allegations in his case were virtually the same as in *Short* where this Court ruled that the doctrine of sovereign immunity did not bar the claim. However, *Short* is distinguishable. The most telling difference is that in the instant appeal Messina alleged that Burden was acting within the scope of his employment with regard to the act complained of.* No such allegation was made in *Short*. One of the critical factors in deciding whether a government employee is entitled to immunity is whether he was acting within or without his authority at the time of doing or failing to do the act complained of. In *Messina* this critical point must be resolved in favor of Burden. The fact that he is said by the plaintiff to have been operating within the scope of his employment together with the allegation of the supervisory nature of his work and the absence of any claim of gross negligence or intentional misconduct demonstrates the correctness of the trial court's decision to sustain the plea of sovereign immunity.

## 2. *Armstrong*

In support of his first assignment of error, Armstrong argues that Johnson was a county employee rather than an employee of the Commonwealth as the trial court found, and hence, that he was not eligible to claim sovereign immunity. He relies upon a passing comment in *James* v. *Jane*, 221 Va. 43, 51, 267 S.E.2d 108, 112 (1980), where we said that "[w]e make a distinction between the Sovereign Commonwealth of Virginia and its employees, and local governmental agencies and their employees." Armstrong construes that comment and similar language in *Short* v. *Griffitts*, 220 Va. 53, 55, 255 S.E.2d 479, 481 (1979), as

---

* The facts concerning the nature of Burden's work were contained primarily in the first amended motion for judgment to which the trial court sustained a demurrer with leave to amend. Though the plea followed the second amended motion for judgment, it is obvious from the trial court's final order that it relied upon both motions for judgment in determining Burden's status. Messina interposed no objection to this procedure. Indeed in his brief he refers to both pleadings. Thus, the trial court did not err in considering allegations contained in the first amended motion for judgment.

the pronouncement of a *per se* rule that the doctrine of sovereign immunity never applies to an employee of a local governmental agency. We disavow such a construction. The distinction we mentioned in *James* and *Short* is one of degree rather than kind. A state employee has a closer nexus to the sovereign. And the identity of the employer is one of the factors to be considered in determining whether a government employee is entitled to the protection of the immunity doctrine. Where an employee works for the sovereign itself, an entity we know to be immune, we can eliminate the step in the analysis which otherwise would require us to ascertain whether the employee who asserts immunity works for an immune governmental entity. As must be obvious from the decision reached in *Banks* v. *Sellers* (handed down after the trial court's ruling in *Armstrong*), where we held a school superintendent and a principal immune, employees of governmental entities other than the Commonwealth itself can receive the benefits of sovereign immunity.

Given our analysis of this appeal, it was unnecessary to attempt to turn Johnson into a quasi-state employee in order for him to be entitled to the protection of sovereign immunity. It would place an unnecessary strain on the English language and on the creative genius of attorneys to require transformation of an employee of a local immune body into a state employee in order to entitle him to immunity. The more workable rule is the one here announced: If an individual works for an immune governmental entity then, in a proper case, that individual will be eligible for the protection afforded by the doctrine.

In his second assignment of error, Armstrong contends that even if Johnson is a person who can secure, in a proper case, the benefits of sovereign immunity, that immunity should be withheld in the instant case because Johnson fails to meet the test set forth in *James* v. *Jane*. *James* involved suits against doctors at the University of Virginia Medical School. At trial, plaintiff alleged that he was injured as the result of negligent acts on the part of the doctors in performing a myelogram. All of the doctors were full-time faculty members of the University of Virginia Medical School. They were required to teach, to do research, and to take care of patients. They were all fully licensed physicians. They all pleaded sovereign immunity. The trial court held that they were immune. We reversed. In our view, the doctors were essentially independent contractors as far as their relationship with their pa-

tients was concerned. We concluded that since matters of treatment were left up to them individually, the State had no control over the doctor-patient relationship and, therefore, the State's immunity had no application to the doctors with regard to claims of negligent medical treatment.

In *James* we developed a test to determine entitlement to immunity. Among the factors to be considered are the following:

1. the nature of the function performed by the employee;

2. the extent of the state's interest and involvement in the function;

3. the degree of control and direction exercised by the state over the employee; and

4. whether the act complained of involved the use of judgment and discretion.

221 Va. at 53, 267 S.E.2d at 113. Armstrong contends that Johnson does not meet the *James* analysis because the *State* had no control over him and the *State* had no interest in Johnson's work. The response to Armstrong's contention is simple: the word "state" was used in this test only because in *James* the State was the immune body for which the doctors worked. Our use of the word "state" did not mean that in cases where the individual seeking immunity was not a State employee the State's interest in and control over the individual still had to be examined. Had the doctors in *James* worked for another immune governmental entity, that entity's name would have been used in the test. Thus, in applying the *James* test to employees of other immune governmental entities, the word "state" should be deleted and the proper description of the governmental entity substituted.

Consequently, in *Armstrong*, in applying the *James* test, the first question is whether Johnson works for an immune body. Since Johnson works for Arlington County and since counties share the tort immunity of the Commonwealth, *Mann v. County Board*, 199 Va. 169, 98 S.E.2d 515 (1957), then Johnson is eligible for immunity if other applicable criteria are met. When the *James* test is modified to insert the word "county" in the place of the word "state," it is apparent that Johnson must be afforded immunity. His activities clearly involved judgment and discretion. The county exercised administrative control over Johnson and his

department. The county had a clear interest in the work performed by Johnson.

## III. *Conclusion*

For all the foregoing reasons, we hold that there was no error in the judgments appealed from. Therefore, the judgments in both appeals will be affirmed.

*Affirmed.*

POFF, J., concurring.

I concur in the result, and I have decided to join in the majority opinion in the hope that it will contribute to uniformity in the application of the law of sovereign immunity in this Commonwealth. I must add, however, that I have a somewhat different view of what the law ought to be.

The complexity the majority finds in the case law results mainly from historical confusion over the differences between the doctrine of sovereign immunity and the doctrine of public-servant immunity (sometimes imprecisely labeled "official immunity"). The confusion stems, I believe, from undue reliance upon the truism that government can act only through the acts of its employees.

The two doctrines are akin but different in concept and effect. The doctrine of sovereign immunity, rooted originally in the tenuous theory that the King of England could do no wrong, finds its most legitimate justification in the right of government to protect its assets, owned in common by the people at large, and to promote the welfare and safety of the body politic by assuring orderly administration of governmental functions.

On the other hand, the primary purpose of the doctrine of public-servant immunity, while related to those underlying the doctrine of sovereign immunity, is to encourage citizens, including those of modest means, to enter government service and, once employed, to carry out their assigned missions responsibly without fear of personal liability for accidental injuries resulting from acts or omissions committed in the exercise of their discretionary powers. Public-servant immunity does not attach merely because the level of government for which the employee works enjoys sovereign immunity.

The rules I suggest would dispense with certain distinctions, invoked in earlier cases, which I consider artificial and illogical. For purposes of the sovereign-immunity analysis, I see no *valid* reason to distinguish between a county and a city; both administer laws and programs which affect the people's interests in the integrity of the public purse and the welfare and safety of the body politic. As an examination of the case law will reveal, it is all but impossible, with any degree of consistency, to determine the difference between a governmental function and a proprietary function, and I would abandon the requirement that courts make the attempt. And, while I would grant no immunity from intentional torts to any employee at any level of government, I would abolish the nebulous distinction we have drawn between simple civil negligence and gross civil negligence.

Having in mind the public-policy purposes of the doctrines of sovereign immunity and public-servant immunity, I favor the following rules:

(1) Absent express waiver, the Commonwealth, counties of the Commonwealth, cities chartered by the Commonwealth, and towns incorporated by the Commonwealth are immune from suit arising out of a tort committed in the discharge of a lawful public function.

(2) Departments, agencies, and other public bodies created by any level of government and authorized to exercise a lawful power of that government enjoy the same immunity.

(3) Chief executive officers and legislators at every level of government, and judicial officers, such as judges, magistrates, and commissioners in chancery, are immune from liability for damages arising out of unintentional torts committed within the scope of their employment.

(4) All other employees of every level of government or of a lawful creature of government are immune from liability from damages arising out of unintentional torts committed in the performance of a judgmental or discretionary duty within the scope of their employment, without regard to whether the misfeasance or nonfeasance is simple or gross.

These rules, like those precipitated by the majority opinion, may not be the ideal solution. Government continues to grow in size and power, and the danger of tortious injury to private citizens by government employees expands apace. Some say the legislature should abolish the judge-made doctrine of sovereign immunity, grant absolute immunity to every government employee for every kind of tort arising out of and during the course of his employment, and, applying the rule of *respondeat superior*, impose liability solely upon the master for the tortious conduct of the servant, with no right of indemnity against the servant.

I would not go so far. Doubtless, such a legislative package would simplify the body of the law for the benefit of legitimate claimants. But it would inevitably tend to curtail an employee's incentive to perform his duties faithfully, invite frivolous and vexatious litigation, and disrupt the orderly administration of governmental functions, all at the expense of the people.

COCHRAN, J., dissenting.

The majority opinion has attempted to lay down a rule of sovereign immunity which reconciles our prior decisions. In my view, the attempt fails because the decisions cannot be reconciled. The result is that the tent of sovereign immunity is now to be stretched to protect from liability far more negligent individuals than ever before.[1] What appears to be the critical test is whether the employee of an immune employer was acting within or without the scope of his employment. The effect of the majority opinion, in my view, is to overrule at least three of our recent decisions on this subject.

In *Kellam v. School Board*, 202 Va. 252, 117 S.E.2d 96 (1960) and *Crabbe v. School Board and Albrite*, 209 Va. 356, 164 S.E.2d 639 (1968), we held that a school board, in the performance of its duties, was an arm of the Commonwealth and, in the absence of waiver by statute, immune from liability for negligence. In *Crabbe*, however, we laid down a different rule for a teacher who was employed by a county school board and performing his duties when a pupil in his class was injured in using a power saw. We held that the fact that the teacher was "perform-

---

[1] I agree that the General Assembly has demonstrated an intent to retain sovereign immunity but I fail to perceive any legislative intent that such immunity be extended beyond any limits heretofore established.

ing a governmental function for his employer" did not exempt him from liability "for his own negligence in the performance of such duties." 209 Va. at 359, 164 S.E.2d at 641.

Twice we have followed *Crabbe* and held that employees of exempt employers were liable for their own acts of negligence. *James* v. *Jane*, 221 Va. 43, 267 S.E.2d 109 (1980); *Short* v. *Griffitts*, 220 Va. 53, 255 S.E.2d 479 (1979). In *Lawhorne* v. *Harlan*, 214 Va. 405, 200 S.E.2d 569 (1973), a majority relied on the distinction between discretionary and ministerial acts to hold an intern and administrators of a state hospital immune because they exercised discretion in their work. *Id.* at 407, 200 S.E.2d at 571-72. But in *James*, the court, without overruling *Lawhorne*, held full-time members of the medical faculty at the same hospital subject to liability for their acts of negligence because they exercised complete discretion in their work. 221 Va. at 52-55, 267 S.E.2d at 113-14.

The majority opinion in *James* repeated the language of *Short* that in our decisions "[w]e make a distinction between the Sovereign Commonwealth of Virginia and its employees, and a governmental agency, created by the Commonwealth, and its employees." I do not consider that the use of that language was casual or inadvertent.

In *Banks* v. *Sellers*, 224 Va. 168, 294 S.E.2d 862 (1982), a school's division superintendent and principal were held to be immune because of the supervisory and discretionary nature of their work. *Id.* at 172-73, 294 S.E.2d at 864-65. But, in *Crabbe* and *Short*, immunity had been denied a shop teacher, an athletic director, a coach, and a buildings and grounds supervisor. The *Crabbe* and *Short* decisions did not rely on the distinction between discretionary and ministerial functions, as the defendants in those cases clearly exercised discretion by the very nature of their work but were nonetheless subject to liability for negligence. Later decisions relying on this distinction are a clear departure from the *Crabbe* rule of individual liability.

In the present cases, the majority finds each defendant to be a supervisory employee exercising discretion in his work.[2] This puts the court in the position of endorsing the distinction relied on in

---

[2] The majority contends that the trial court determined the nature of Burden's work from the allegations of the first amended motion for judgment, to which a demurrer previously had been sustained. Because Messina did not object to this procedure, the court finds the action to be proper.

*Lawhorne* and *Banks* and contravening the clear mandate of *Crabbe, Short,* and *James.* Accordingly, I dissent. To immunize employees of local arms or agencies of the state government is to regress from established principles of law. In *Short,* we held that whether the employees' duties included supervision, maintenance, and inspection of facilities and whether they breached such duties thereby proximately causing plaintiff's injuries were questions of fact to be decided at trial. 220 Va. at 55, 225 S.E.2d at 480. Similarly, Messina and Armstrong should be entitled to try the questions whether Burden and Johnson had duties to inspect and maintain the premises under their supervision, whether they breached such duties, and whether their breach proximately caused injuries to their respective plaintiffs.

STEPHENSON, J., joins in this dissent.

---

There is no express indication in the order that the first amended motion for judgment formed the basis of the decision. The majority's reliance on Messina's failure to object to a procedure not apparent on the face of the order appears to me to be unjustified. Furthermore, it is worth noting that counsel did object to entry of the order.