## CIRCUIT COURT OF CLARKE COUNTY

Grites

v.

Clarke County et al.

October 31, 1988

Case No. (Law) 2023

By JUDGE ROBERT K. WOLTZ

At issue is the immunity of the County of Clarke, its county attorney and its animal control officer from civil liability for negligent acts charged against them resulting in a claim for damages by the plaintiff, Grites. The County, its attorney, and its animal control officer, each filed a plea of immunity from civil liability as a matter of law. The pleas are sustained.

The motion for judgment alleges that the county attorney at the behest of the county animal control officer filed a petition in the general district court under Section 18.2-402 Code of Virginia 1950 (1982 Repl. Vol. 4) concerning the physical condition of certain hogs of Grites. Pursuant to an order entered in that case, the officer sold the animals. Further allegation is that on proceedings in the circuit court, the district court was held to be without jurisdiction to order the sale, that the seizure and sale of the animals was illegal, depriving Grites of his property, and that the action of the defendants were "malicious or so reckless or so negligent as to evince a conscious disregard for the rights of" Grites. On this basis he seeks damages. The record of the case on the petition of the county in the general district court and

the record of subsequent proceedings in this court have been made part of the record in this proceeding.

Code § 18.2-402 (now appearing substantially unchanged as § 3.1-796.115 (Cum. Supp. 1983, Repl. Vol. 1A) provided that certain officers such as the animal control officer "may lawfully take charge of" animals found abandoned, neglected, etc., and petition the district court for hearing concerning the animals and the owner if known. The statute then provides particular means of notifying the owner of the hearing. At the hearing on finding certain conditions to exist, the court orders alternate disposition of the animals, one of which is sale by the officer at auction, followed by provision for disbursal of the sale proceeds.

Proceedings were had in the general district court pursuant to the code section, except that the motion for judgment alleges the petition was filed before seizure of the animals. On appeal the circuit court held the district court, because of faulty notice to Grites of the hearing on disposition of the animals, did not have jurisdiction to order their sale. The proceedings under Section 18.2-404 is *in rem.* In the subsequent circuit court proceedings, lack of jurisdiction on the part of the district court was found not to be on the basis of subject matter, but solely on the procedural point that the notice to Grites of the hearing, at which he did not appear, did not comport with statutory requirements. The immunity issue will be considered from the standpoint of the county, the county attorney, and the animal control officer.

For centuries the common law doctrine of sovereign immunity has been accepted as one of the foundation stones upon which the edifice of government has been erected. The principle and its theoretical basis is stated by W. Blackstone in I Commentaries on the laws of England 238, thus:

> Besides the attribute of sovereignty, the law also ascribes to the king, in his political capacity, absolute *perfection.* The king can do no wrong. Which antient and fundamental maxim is not to be understood, as if everything transacted by the government was of course just and lawful, but means only two things. First, that whatever is exceptional in the conduct of public

affairs is not to be imputed to the king, nor is he answerable for it personally to his people: for this doctrine would totally destroy that constitutional independence of the crown, which is necessary for the balance of power, in our free and active, and therefore compounded, constitution. And, secondly, it means that the prerogative of the crown extends not to do any injury: it is created for the benefit of the people, and therefore cannot be exerted to their prejudice. (Emphasis in original)

There has, of course, in our form of government been a transmutation of the king to the Commonwealth which is the sovereign people acting through their duly constituted representatives.

The sovereign Commonwealth cannot be sued except where necessary to vindicate private rights, particularly contract rights, constitutionally protected or by her own sufferance granted by statute. More recently the 1981 Virginia Tort Claims Act, §§ 8.01-195.1 et seq., in effect at the time of the plaintiff's claim allows in a limited way negligence actions against the Commonwealth. Despite the Act, sovereign immunity is "alive and well" in this State. It does not abolish sovereign immunity, and later amendment of the Act in effect when plaintiff's claim arose positively provides: "[N]or shall any provision of this article . . . be construed as to remove or in any way diminish the sovereign immunity of any county, city, or town in the Commonwealth. *Messina v. Burden*, 228 Va. 301 (1984). In *Fry v. County of Albemarle*, 86 Va. 195 (1890), counties were classified as political subdivisions of this State and like the State held not subject to suit except where permitted by statute. In another case involving personal injuries resulting from alleged negligence, *Mann v. County Board*, 199 Va. 169, 173 (1957), counties were held not to be liable for injuries caused by the negligence of their officers and employees, the court reasoning:

In Virginia, territorially and politically, counties are integral parts of the State. They are created for civil administration, in keeping

with the policies of the State, of such powers as may be delegated and conferred on them, and serve as agencies of the State for the purposes specified, subject to such liabilities as are imposed upon them by law. (Citations omitted)

One of the cases decided in the *Messina* opinion involved the question of immunity of a county official. While the county itself was not sued, the holding is clear that the county enjoyed sovereign immunity because the employee was found to be immune from suit on the basis that he was an agent of an immune entity. As recently as *Lentz v. Morris*, 236 Va. 78 (1988), in the course of the opinion, the proposition in *Messina* that a county shares the immunity of the State was approved. Therefore in the present case, the county is the beneficiary of sovereign immunity with respect to the suit of the plaintiff.

The immunity of a public employee from suit presents the additional problem of the nature and function of his employment. In determining whether the employee of an immune entity is himself entitled to immunity, *Messina* extrapolated from *James v. Jane*, 221 Va. 43 (1980) certain factors among others to be considered which were as follows:

1. The nature of the function performed by the employee;

2. The extent of the state's interest and involvement in the function;

3. The degree of control and direction exercised by the state over the employee; and

4. Whether the act complained of involved the use of judgment and discretion.

Testing the status of the county attorney as to his immunity *vel non* his immunity is established.

The function performed by a county attorney is vital to the affairs and business of the county. His advice to its governing body and officers and his institution or defense and conduct of litigation is of high importance in the administration of local government. The county's "interest and involvement" is inextricably bound up in the function which he performs. While of necessity he must have considerable latitude in performing his duties, yet the work assigned him and ultimate control of it rests

with the county. Finally, consonant with the very concept of an attorney, he is charged with the use of a high degree of judgment and discretion generally and particularly with regard to the act complained of by the plaintiff. The last prong of the test is of special weight in this case. Whether to bring suit or not, examining into the legal basis for suit, drafting of pleadings, and conduct of the litigation when instituted all call for the exercise of essential professional judgment and discretion. The county attorney meets the test for immunity of an officer or employee of an immune entity.

Much of the same can be said of the application of the test to the animal control officer. Police officers are charged with the duty and obligation of seeing to the enforcement of the laws. Not only is enforcement of vital interest to the county but the officer's performance of his function and discharge of his duties in an acceptable fashion rests heavily on the exercise of his judgment and his discretion. Under the enumerated factors to test whether the protection of immunity exists, the animal control officer is entitled to that immunity.

The animal control officer is also immune on another ground concerning one of his acts complained of by the plaintiff. Grites alleges that the animal control officer "instigated" the legal proceeding with respect to which he has been found immune. The officer is also charged with the selling of the animals to the damage of Grites. While some discretion may have been required of the officer in determining when and where and how to conduct the public auction of the hogs, the duty to sell them was a ministerial function. Sale was performed in response to the directive of a competent court having jurisdiction of the subject matter. The subject matter of the suit was the animals involved and what to do about them. The district court was vested in such circumstances by the express terms of the statute.

A court having jurisdiction of the subject matter, an officer to whom its mandate is issued must carry it out. On appeal the order of the general district court may have been found defective due to failure of the precise notice required by statute, but this does not lessen the responsibility of the officer to have carried out the order as that court had jurisdiction of the subject matter.

If officers of the law were at liberty to arrogate the judicial function to themselves and to disregard or refuse to carry out or second guess the judgments of courts, then the courts would be virtually powerless and the administration of justice grievously if not fatally damaged. This principle was recognized more than a century and a half ago in *Yeager v. Carpenter*, 35 Va. (8 Leigh) 454 (1836), speaking through Carr, J. when he said:

> I have always held it among the oldest and best settled principles of law, that a sheriff or other officer, executing the process or carrying into effect the orders of a court was protected from all consequences, however irregular and erroneous was the proceeding; provided only that the court had jurisdiction of the matter.

In the same case Tucker, P. opined:

> The county courts are invested with jurisdiction over the roads of their respective counties, and having that jurisdiction, their officer or minister . . . must obey their order, and is not entitled to question either the judiciousness or the regularity of the exercise of their power.

Finally, Grites charges that the actions of the defendants were malicious or reckless and negligent to the extent of showing a disregard of his rights. "A state employee who acts wantonly, or in a culpable or grossly negligent manner, is not protected" by sovereign immunity, *James v. Jane, supra,* at page 53, and certainly the same is true of county employees. Aside from the fact that the allegations in the motion for judgment as to malice and disregard of rights may be conclusory in nature, the actions of the attorney and the officer in instituting and prosecuting this suit appear to be founded on probable cause. The action of the district court in determining favorably the propriety of seizing the animals is sufficient to demonstrate the existence of probable cause for the

actions of the animal control officer and those of the county attorney.

The present suit is analogous to one for malicious prosecution. In that type of case, a plaintiff must demonstrate among other things not only that the prosecution was malicious but that it was also without probable cause. *Wiggs v. Farmer*, 205 Va. 149 (1964); *Gaut v. Pyles*, 212 Va. 39 (1971). With respect to the animal control officer, *see Pallas v. Zaharopoulos*, 219 Va. 751 (1979), concerning consultation and advice of counsel as it affects good faith and malice. In this case, probable cause demonstrably appearing for the institution of suit and the seizure of the hogs, the existence of malice or other motive on the part of the animal control officer and the county attorney is essentially immaterial. That much being determined, the two officials cannot be held responsible for further proceedings resulting in sale of the animals by court order, albeit not founded on the type of service required by the statute, for that was the action of the court, not of these individuals.

For the foregoing, the pleas of sovereign immunity are sustained.