# CIRCUIT COURT OF THE CITY OF CHARLOTTESVILLE

Trinica Ann Lee,
an infant, who sues by
Eartha K. Lee,
her mother and next friend

v.

Siva Thiagarajah et al.

May 24, 1995

Case No. (Law) 5583

BY JUDGE JAY T. SWETT

The plaintiff, Trinica Ann Lee, through Eartha K. Lee, her mother and next friend, has filed a medical malpractice action against the Defendant, John F. Bourgeois, M.D., and other defendants claiming that they negligently provided medical treatment to the plaintiff while a patient at the University of Virginia Health Sciences Center. One of the defendants, Dr. Bourgeois, has filed a motion for summary judgment based on the doctrine of sovereign immunity. The material facts on this issue are not in dispute.

### Facts

On September 27, 1985, Ms. Eartha K. Lee gave birth to the plaintiff, Trinica Ann Lee, at the University of Virginia Health Sciences Center. During delivery the plaintiff sustained injuries which are the subject of this suit.

The Health Sciences Center is made up of the University of Virginia Hospital and the University's Medical and Nursing Schools. The Medical School and Hospital are agencies of the Commonwealth of Virginia.

The relevant medical personnel involved in this case may be divided into two categories. The first group consists of the "medical staff," and includes full-time faculty members of the School of Medicine who have

completed all of their training. They are also attending physicians for patients they admit to the Hospital or for those they treat at the request of another medical service. The second group is referred to as "house staff." These individuals are recent medical school graduates who are receiving further training in a medical specialty either as an intern, resident, or fellow.

The Defendant, John F. Bourgeois, M.D., was, in September of 1985, a member of the medical staff. At the time of the plaintiff's birth, members of the house staff, as was usually the case, were providing the primary direct medical care to Eartha K. Lee. Dr. John F. Donnelly was the Chief Obstetrical Resident and a member of the house staff. On September 27, 1985, he served as Ms. Lee's primary obstetrical physician. At some point during that afternoon, Dr. Bourgeois became the "on-call" attending physician for the entire Obstetrical Department, including the high risk pregnancy service where Ms. Lee was admitted. As "on-call" physician, he was available for consultation by any member of the obstetrical house staff, including Dr. Donnelly. The house staff had been instructed to call the attending physician if they would encounter a medical situation which they believed was beyond their level of experience or knowledge. The house staff would consult the "on-call" attending physician for advice or to gain approval for certain courses of treatment. Dr. Siva Thiagarajah, a co-defendant, had been the attending physician for Ms. Lee since her admission on September 23, 1985.[1] On the afternoon of Friday, September 27th, Dr. Bourgeois became the on-call attending physician for all obstetrical patients, including Ms. Lee, when Dr. Thiagarajah signed off for the weekend.

The plaintiff was born at approximately 6:57 p.m. on September 27th. Dr. Donnelly performed the delivery. Dr. Bourgeois never visited or "rounded on" Ms. Lee prior to delivery. He was not involved in the delivery, nor is there evidence he knew Ms. Lee was in the process of giving birth. Dr. Bourgeois received no request for assistance, approval, advice, or consultation either prior to or during the delivery.

---

[1] Dr. Thiagarajah was the member of the medical staff who admitted Ms. Lee to the hospital. Only medical staff members have admitting privileges. Dr. Thiagarajah had developed the medical treatment plan for Ms. Lee's high risk pregnancy.

*Analysis*

The defendant seeks summary judgment on the ground of sovereign immunity. Summary judgment shall not be entered if any material fact is genuinely in issue. *Emerson v. Decker Realty Corp.*, 232 Va. 71, 348 S.E.2d 239 (1986). In *James v. Jane*, 221 Va. 43, 267 S.E.2d 108 (1980), and in *Messina v. Burden*, 228 Va. 301, 321 S.E.2d 657 (1984), the Supreme Court of Virginia set out a four-factor test to determine if a state employee is entitled to sovereign immunity from tort liability. The factors are:

1. the nature and the function performed by the employee;
2. the extent of the state's interest and involvement in the function;
3. the degree of control and direction exercised by the state over the employee; and
4. whether the act complained of involved the use of judgment and discretion.

*Messina*, 228 Va. at 313. Applying these factors to Dr. Bourgeois in the context of the facts here, my conclusion is that he is entitled to sovereign immunity.

### 1. *The Nature and Function Performed by the Employee*

The Supreme Court pointed out in *James* that a medical staff doctor employed by the University Medical Center will have two related but different duties. A medical staff doctor has the responsibility to teach and train residents. A medical staff member will also practice his or her specialty and treat patients as an attending physician. 221 Va. at 50. Since *James*, attending physicians at state hospitals who treat patients and perform medical procedures upon them are not afforded immunity. "A physician who fails to use reasonable care in the treatment of a patient acts at his own risk and is not entitled to invoke the doctrine of sovereign immunity." *Id.* at 55. The court stated that "at the point when the physician agrees to treat or operate on a certain patient . . . the relationship becomes the personal and confidential one of doctor and patient, not the Commonwealth of Virginia and patient." *Id.* at 50.

In *Klein v. Boyle*, 776 F. Supp. 285 (W.D. Va. 1991), *aff'd* 8 F.3d 819 (4th Cir. 1993) (unpublished opinion), the District Court, in a medical malpractice case also originating from events taking place at the University of Virginia Medical Center, addressed the sovereign immunity issue in

a way instructive to the facts here. The court focused on the question of whether there existed a physician-patient relationship between each defendant doctor and the plaintiff. Applying the *James* and *Messina* test, the court held that the attending physicians who rounded on the plaintiff were performing a caregiving, or patient-treating, function and thus were not entitled to sovereign immunity. *Id.* at 288. However, the court granted immunity to the Director of Ophthalmology Services. While the court found that the Director had the supervisory responsibility to respond to consultation requests for hospital patients that were directed to his service, the Director never had any direct contact with the plaintiff. *Id.* The court stated that the physician-patient relationship was never established between the plaintiff and the Director of Ophthalmology Services. The fact that he was ultimately responsible for all ophthalmology services rendered to hospital patients did not mean that he was directly responsible for the manner of treatment of every patient in the Medical Center needing ophthalmology services. *Id.*

The facts of this case place Dr. Bourgeois somewhere between the *Klein* and *James* attending physicians and the *Klein* Director of Ophthalmology. On September 27, 1985, Dr. Bourgeois was the designated on-call attending doctor for all obstetrical patients in the hospital. He would be the person whom Dr. Donnelly would have called for assistance, consultation, advice, or approval if Dr. Donnelly felt the need to make such a call. It is true that in this role, Dr. Bourgeois was not as removed from direct patient care as was the Director of the Ophthalmology Services in *Klein*. However, unlike the *Klein* and *James* attending physicians, Dr. Bourgeois provided no medical treatment to Ms. Lee and performed no procedures upon her; he did not round on Ms. Lee, and at no time was he called on for advice, approval, or consultation regarding her delivery.

As a result of his lack of any direct involvement in the treatment of Ms. Lee, there existed no physician-patient relationship between Dr. Bourgeois and Ms. Lee or Trinica Lee.[2] As opposed to the attending doctors in *James*, Dr. Bourgeois never "agreed to treat or operate" on Ms. Lee. *James*, 221 Va. at 50. Since there existed no physician-patient relationship in this case, Dr. Bourgeois was serving more the function of a teacher and

---

[2] It is true that he was the only attending on the obstetrical service at the time of Ms. Lee's delivery. However, this is not the equivalent of having a physician-patient relationship which is both "personal and confidential." *James*, 221 Va. at 50.

consultant to residents, as opposed to a treating physician administering medical care to patients.

The plaintiff cites Va. Code Ann. § 54.1-2961 (1994), which permits interns and residents holding temporary licenses to practice medicine on a limited basis. That statute states, "[s]uch intern or resident shall be responsible and accountable at all times to a licensed member of the staff." Plaintiff argues that this is supportive of the idea that Dr. Bourgeois, as the on-call attending physician, was vicariously responsible for the actions, including any negligently delivered medical care, of the chief resident, Dr. Donnelly. Such a construction of this statute would extend its applicability beyond that intended by the legislature. Dr. Bourgeois' status as the on-call attending physician did not bring with it the obligation to treat every obstetrical patient in the Medical Center or to be responsible for all treatment administered by the house staff. See *Klein*, 776 F. Supp. at 288. Unless an on-call attending visits the patient, performs a procedure on the patient, or in some other way is involved in or affects the patient's course of treatment, the physician-patient relationship with its accompanying duties and obligations is not created.

Drawing the line of immunity at this point also serves one of the basic purposes for which sovereign immunity was created. In *Messina*, the court stated that "without sovereign immunity, public service might be threatened because citizens might be reluctant to take public jobs." 228 Va. at 307. Such reasoning applies here. If an on-call attending physician employed as a faculty member by a state hospital, who has not been consulted by a treating house staff doctor and has no involvement in a patient's treatment, may be held liable for the negligent manner in which a house staff doctor treats the patient, there might well arise among qualified physicians an unwillingness to accept faculty teaching positions in state medical schools. This would be of great concern to the Commonwealth. As the Supreme Court stated in *James*, "the paramount interest of the Commonwealth of Virginia is that the University of Virginia operate a good medical school and that it be staffed with efficient and competent administrators and professors." *James*, 221 Va. at 54.

The plaintiff argues that granting Dr. Bourgeois immunity would encourage attending physicians to avoid patient contact so as to prevent a physician-patient relationship from being formed. There is little foundation for such an argument. Granting immunity in this case would not encourage on-call attendings to tactically avoid patients treated by the residents they supervise. It is the resident and not the attending doctor who

initiates the request for the consultation, advice, or approval. Once the resident engages the attending through a request for consultation, advice, or approval and the attending becomes involved in the patient's treatment, the physician-patient relationship is created between attending and the patient.

### 2. *The Extent of the State's Interest and Involvement in the Function*

The Commonwealth of Virginia possessed a strong interest and involvement in the consulting and supervisory function performed by Dr. Bourgeois as the on-call attending on September 27, 1985. As noted above, in *James*, the court noted the strong interest of the Commonwealth in maintaining a good medical school staffed with qualified professors. 221 Va. at 54. It would not further the state's interest if on-call attendings at a teaching hospital have to be concerned that they may be vicariously liable for negligently-administered medical treatment administered by house staff physicians seeing patients on a service where the attending has no involvement in the care of the patient.

### 3. *The Degree of Control and Direction Exercised by the State Over the Employee*

In *Lohr v. Larsen*, 246 Va. 81, 88, 431 S.E.2d 642 (1993), the court stated that "[a] high level of control weighs in favor of immunity; a low level of such control weighs against such immunity." The court in *James* stated that the control exercised by the state over the attending physician *in the treatment* of a patient is slight. *James*, 221 Va. at 54 (emphasis added). The court also noted that "attending physicians of patients exercise broad discretion in selecting the methods by which they *care* for them." *Id.* at 48 (emphasis added). In that case, the function served by the attending physicians was that of a treating doctor, and the court's "control" analysis was based upon this fact. In this case, Dr. Bourgeois was not serving in the same capacity. Rather, Dr. Bourgeois was serving as the on-call attending for the entire service, available to residents and house staff members when needed. He, as other attendings on the service had to do, was scheduled periodically as the on-call attending for the service. In addition, in *Lohr*, the court noted that "when a government employee is specially trained to make discretionary decisions, the government's control must necessarily be limited in order to make maximum use of the employee's special training and subsequent experience." 246 Va. at 88. Any lack of extensive control over Dr. Bourgeois by the state is understandable in

light of his special training and experience. It does not justify denying the defendant sovereign immunity.

### 4. Whether the Act Complained of Involved the Use of Judgment and Discretion

The defendant's responsibilities as the on-call, attending physician on his service involved the use of judgment and discretion. He was free to choose the manner in which he responded to requests for consultation, advice, or help to the residents.

### Conclusion

Under the four-factor test for sovereign immunity set out by *James* and *Messina*, the defendant is entitled, as a matter of law, to immunity. The defendant's Motion for Summary Judgment is thus granted.