# CIRCUIT COURT OF THE CITY OF RICHMOND

Sherilla Reid

    v.

John Kenneth Hammer

July 8, 2003

Case No. LP-1674-4

BY JUDGE RANDALL G. JOHNSON

This action is before the court on what appears to be a matter of first impression not only in Virginia, but everywhere else as well. Neither the court nor counsel have found any case on point from any jurisdiction. Specifically, the court must decide whether sovereign immunity applies to a police officer involved in an automobile accident that occurs after the official call to which the officer was responding had been cancelled but before the officer was aware of the cancellation.

Plaintiff's motion for judgment alleges that on September 28, 2001, plaintiff was injured when the school bus she was driving was struck by a vehicle driven by John Kenneth Hammer, a City of Richmond police officer. At the evidentiary hearing on Hammer's plea of sovereign immunity, it was established that, while in his police cruiser shortly before the collision, Hammer received a dispatcher's call of a child locked in a car at 6333 Midlothian Turnpike. Hammer does not remember whether he turned on his flashing lights and siren, but he was trying to respond quickly. Before he got to 6333 Midlothian Turnpike, he collided with plaintiff.

According to the City of Richmond Departments of Police and Emergency Communications "Calls for Service Report" introduced into evidence at the

hearing, the subject call was received by the dispatcher at 6:53 a.m. Also according to the report, the dispatcher received notice at 6:55 a.m. that the call was cancelled. Although counsel for plaintiff argued that it is the practice of city dispatchers to immediately communicate all information received that relates to a call, particularly notice that the call is cancelled, there was no direct evidence as to when, or if, the dispatcher notified Hammer or anyone else that the call at issue in this case had been cancelled. Hammer collided with plaintiff at approximately 7:02 a.m. Hammer testified that he was not told prior to the collision that the call had been cancelled and that he thought a child was still locked in a car when he collided with plaintiff. The court believes his testimony.

In *Heider v. Clemons*, 241 Va. 143, 400 S.E.2d 190 (1991), a sheriff's deputy struck a motorcycle with his car after he had served process at a residence and was leaving the space where he had parked. Holding that the deputy's operation of his vehicle at the time of the collision "did not involve special risks arising from [a] governmental activity, or the exercise of judgment or discretion about the proper means of effectuating the governmental purpose of the driver's employer," 241 Va. at 145, the Court held that sovereign immunity did not apply. In *Nationwide Mutual Ins. Co. v. Hylton*, 260 Va. 56, 530 S.E.2d 421 (2000), however, the court held that a state trooper who had made the decision to pursue an unidentified motor vehicle operator who had committed a traffic infraction was entitled to sovereign immunity with regard to an accident he was involved in while conducting such pursuit. The court explained:

> Enforcement of traffic laws is not only a primary governmental function of a municipality, but one in which the municipality is inextricably involved through financial, personnel, and policy initiatives. A municipality enjoys sovereign immunity for acts undertaken in furtherance of this function. [The police officer] was involved in the performance of this function for the City of Virginia Beach at the time of the accident, thereby satisfying the first two elements of the test.[1] . . . .

---

[1] The "test" referred to in the quotation is the four-part test set out in numerous cases dealing with sovereign immunity, including *Gargiulo v. Ohar*, 239 Va. 209, 212, 387 S.E.2d 787 (1990); *Lentz v. Morris*, 236 Va. 78, 82, 372 S.E.2d 608 (1988); *Messina v. Burden*, 228 Va. 301, 313, 321 S.E.2d 657 (1984); and *James v. Jane*,

Unlike the driver in routine traffic, the [police] officer must make difficult judgments about the best means of effectuating the governmental purpose by embracing special risks in an emergency situation. Such situations involve necessarily discretionary, split-second decisions balancing grave personal risks, public safety concerns, and the need to achieve the governmental objective. The exercise of discretion is involved even in the initial decision to undertake the pursuit. . . ."

260 Va. at 63 (*quoting Colby* v. *Boyden*, 241 Va. 125, 129-30, 400 S.E.2d 184 (1991)).

In the case at bar, Hammer was told that a child was locked in a car. That call involved the welfare and safety of a human being and is as much a governmental function as pursuing lawbreakers. It was an emergency call and, as such, required Hammer to exercise discretion and make judgments about how best to respond to it. If the call had not been cancelled at the time of the collision, this court would have no hesitation in holding that sovereign immunity applies and that plaintiff can recover only upon a showing of gross negligence. On the other hand, if Hammer knew prior to the collision that the call had been cancelled, the court would have no hesitation in holding that sovereign immunity does not apply and that proof of simple negligence would be enough to recover. The question, of course, is whether sovereign immunity applies in light of the fact that the call had been cancelled and in light of the fact that Hammer did not know of the cancellation. The court holds that it does.

Even under the best of circumstances, it takes some time for the cancellation of an emergency call to be communicated to an officer in the field. The dispatcher may want to verify the cancellation, the officer may be away from his or her radio, there may be a mechanical malfunction of the communication equipment, or there may be other reasons why actual word of the cancellation does not reach the officer immediately. To hold that the cancellation itself deprives an officer of the protection of sovereign immunity would allow situations in which police officers acting in good faith on the belief they are carrying out important governmental functions would lose the

---

221 Va. 43, 53, 282 S.E.2d 864 (1980). The four parts of the test are "(1) the nature of the function the employee performs; (2) the extent of the government's interest and involvement in the function; (3) the degree of control and direction exercised over the employee by the government; and (4) whether the act in question involved the exercise of discretion and judgment." 260 Va. at 129.

254

protection of sovereign immunity because they were not told that the situation they thought they were responding to no longer existed, even if the failure to communicate such fact to the officer was not due to fault on anyone's part. The court refuses to establish such a rule.

Since the court believes Hammer's testimony that he was not told that the call to which he was responding was cancelled and since the court further believes that the initial call was of such a nature as to invoke the protection of sovereign immunity, Hammer's sovereign immunity plea will be sustained. Plaintiff will be given fifteen days in which to amend her motion for judgment to allege gross negligence, if she be so advised and if she can do so in good faith. See Va. Code § 8.01-271.1.