# CIRCUIT COURT OF THE CITY OF CHARLOTTESVILLE

Nellie M. Dowdy

v.

Commonwealth of Virginia et al.

Case No. CL 09-49

Nellie M. Dowdy

v.

Kathy Pierpont Pickral

Case No. CL09-191

June 10, 2010

BY JUDGE PAUL M. PEATROSS, JR.

The Court heard evidence and argument on the Defendant Lauren M. Breeden's Plea in Bar on the basis of Sovereign Immunity on September 9, 2009. At the same time, the Court considered Kathy P. Pickral's Demurrer/Motion to Dismiss, which was also argued on September 9, 2009. After reviewing the legal authorities, the Court ruled on both matters in two separate letter opinions, both issued September 25, 2009. Breeden's Plea in Bar was sustained; Pickral's Demurrer was sustained in part and denied in part.

Plaintiff asks the Court to reconsider its earlier decisions granting sovereign immunity to Breeden and partial immunity to Pickral on the basis of a deposition Pickral gave subsequent to its rulings. Plaintiff contends that Pickral's deposition gives rise to factual disputes sufficient to overturn its previous opinions. After evaluating Pickral's testimony and reviewing prior factual findings, the Court finds that Breeden's status as a trainee still satisfies the requirements for sovereign immunity. By implication, Pickral is also immune in her supervisory capacity. Accordingly, the Court will not disturb either of its earlier rulings.

## Factual Background

Richard Hooper, Medical Center Manager of the Diagnostic Radiology Department at the University of Virginia Medical Center, testified that he oversees a staff of sixty who perform diagnostic testing. Lauren M. Breeden was hired on May 21, 2007, as a radiologic technologist, subject to a six-month probationary and training period. A radiologist takes x-rays of patients on order of a physician.

Upon being hired, the new employee was assigned a supervisor and was given an "Orientation Competency Assessment and Evaluation Form," ("OCAE") which was introduced as Defendant's Exhibit # 1. On that form are certain skills the employee must demonstrate to the supervisor after training during the probationary period.

This matter came to the court when Plaintiff Nellie M. Dowdy filed claims of negligence against, *inter alia*, Kathy P. Pickral and Lauren M. Breeden, who were both employed by the University of Virginia Health System in the radiology department. Plaintiff had been admitted to UVA Medical Center after injuries suffered in a fall; she thereafter underwent surgery on her right hip. On June 18, 2007, Pickral was charged with obtaining two x-rays of Plaintiff's pelvis and right hip in the Post-Anesthesia Care Unit (PACU). Breeden, who was not yet permitted to take x-rays on her own, accompanied Pickral to the PACU.

Pickral and Breeden performed the pelvic x-ray together, or at least both agree that they were present and engaged with some aspect of that procedure. Before the second x-ray could be completed, Pickral was called away to the OR. Breeden performed the second x-ray independently, in the course of which she used a plastic board to position the patient. She did not remove the board after taking the x-ray, and it was not ultimately removed for more than 24 hours. Pickral did not verify that Breeden had completed the x-ray or whether she had removed the board. According to

Plaintiff's complaint, failure to remove the board was the cause of her injury.

UVA Medical Center is an agent of the state. Lauren M. Breeden is employed by the Medical Center on a salary, is not paid by the patients, and cannot choose which patients she x-rays.

## Issues Presented

(1) How does Kathy Pickral's deposition testimony change the analysis of Lauren Breeden's sovereign immunity claim under the four-part test set forth in *James v. Jane*, 221 Va. 43, 267 S.E.2d 108 (1980)?

(2) Does Pickral's testimony raise factual disputes sufficient for the court to reconsider its prior rulings granting full immunity to Breeden and partial immunity to Pickral?

## Legal Authority and Analysis

Sovereign immunity is not an impregnable shield. A distinction must be made between the state's absolute immunity and the qualified immunity of state employees and officials, which depends on the "function they perform and the manner of performance." *James*, 221 Va. at 53, 267 S.E.2d at 110. Choosing which government employees deserve immunity requires line drawing, and it falls to the Court to weigh the relevant circumstances and make a final determination. *Messina v. Burden*, 228 Va. 301, 310, 321 S.E.2d 657, 662 (1984). In *James*, the Supreme Court of Virginia enunciated a four-factor test that individuals must fulfill to qualify for sovereign immunity:

(1) The nature of the function performed by the employee;
(2) The extent of the state's interest and involvement in the function;
(3) The degree of control and direction exercised by the state over the employees;
(4) Whether the act complained of involved the use of judgment and discretion.

*Messina*, 228 Va. at 313, citing *James, supra.*

After revisiting each factor, the Court is not persuaded that Pickral's deposition changes the *James v. Jane* analysis. Addressing each element in

turn, Breeden remains within the class of state employees protected by sovereign immunity.

(1) *Breeden Primarily Functioned as a Trainee*

With respect to the first factor, the nature of Lauren M. Breeden's job was to be trained at UVA Medical Center's Department of Radiology over a six-month probation period. When the Court granted sovereign immunity in its September 25, 2009, ruling, Breeden satisfied the *James v. Jane* four-factor test because she was deemed a "trainee" at the time, subject to Pickral's supervision and control. However, Pickral asserts that she was not "assigned" to supervise Breeden, and was in fact just "showing her the ropes." (Pickral Dep. 18, Oct. 20, 2009.) According to Pickral, she had never been asked to train Breeden and was not obligated to make performance reports. (Pickral Dep. 18.) Plaintiff urges that, in light of Pickral's deposition, Breeden's primary job function was not training. (Pl.'s Mem. Supp. Recons. 7.)

However, even allowing that Pickral was not Breeden's "supervisor" at the time of the incident, Breeden's primary responsibility as a new employee was still to learn. Whether Pickral thought otherwise does not bear on the analysis, since both the state agency and Breeden prioritized the education function. At the time of the incident, the Medical Center specifically considered Breeden an "orientee" and required that she document her ongoing progress in learning various radiologic procedures on an "Orientation Competency Assessment and Evaluation Form" ("OCAE"). (Def's Ex. 1.) Her probation would not end until October 2007, and pursuant to Departmental rules she was not permitted to x-ray patients independently before then. (Hr'g Trans. 12, September 9, 2009.) Despite Plaintiff's assertions to the contrary, Breeden's function was clearly educational, and she satisfies this factor.

(2) *The State Has a Strong Interest in Educating Medical Professionals*

The Commonwealth of Virginia has a keen and well-settled interest in the training of medical professionals. In *James*, the Supreme Court emphasized the state's particular *sovereign* interest in medical education: "[t]he paramount interest of the Commonwealth of Virginia is that the University of Virginia operate a good medical school and that it be staffed with efficient and competent administrators and professors." *James*, 221 Va. at 54, 282 S.E.2d at 870; *see also Gargiulo v. Ohar*, 239 Va. 209, 213,

387 S.E.2d 787, 790 ("[T]he student function is essential to achievement of the Commonwealth's goal, one undertaken in the public interest, of training and maintaining a pool of specialists skilled in a particular discipline.").

The State therefore has an interest in training radiologic technicians so that they can follow doctor's orders and render skilled treatment. To effectuate its interest, the State must afford teaching institutions broad latitude in educating their employees. According to both the OCAE and hearing testimony, Breeden was a "trainee" on June 18, 2007. Plaintiff's memo, relying on Pickral's deposition testimony, insists that Breeden was already trained in x-ray procedures and was simply "learning the ropes" at UVA, so she is not properly characterized as a trainee. (Pl.'s Mem. 7; Pickral Dep. 16.) However, the distinction between learning general x-ray procedures and learning UVA's internal protocols does not change Breeden's qualification for immunity. Medical professionals must often adapt to different circumstances and settings, and it follows that "learning the ropes" of a new institution is integral to an individual's education, which, as already noted above, is a well-recognized state interest.

### (3) *The State Exercised a Great Deal of Control over Breeden*

Nothing in Pickral's deposition changes the state's degree of control over Breeden. Irrespective of her status as a trainee, Breeden readily meets this condition. She was employed by the state; she used equipment provided by the state; she received her salary from the state; she received no additional remuneration from patients; and she could not choose her patients.

### (4) *In Deciding Whether and How to Position Plaintiff, Breeden Used Judgment and Discretion*

Plaintiff argues that the act alleged to be negligent, failure to remove the board from beneath her, was strictly ministerial. Under the *James* test, purely ministerial acts do not invoke the shield of sovereign immunity. *James*, 221 Va. at 54, 282 S.E.2d at 870. *Black's Law Dictionary* (7th Ed.), defines "ministerial" as: "Of or relating to an act that involves the obedience to instruction or law instead of discretion, judgment, or skill." At the evidentiary hearing, Richard Hooper indicated that new trainees are often taught techniques with which they are unfamiliar. (Hr'g Trans. 11.) Although Breeden had performed "many"

hip x-rays during her two years of training at Rockingham Memorial Hospital, she claims to have never used a cardiac compression board to level out a patient. (Hr'g Trans. 37.)

The substance of Pickral's instructions to Breeden is disputed. Under either factual scenario, however, an unsupervised trainee would necessarily use judgment and discretion to complete an unfamiliar procedure. Breeden testified that she was not instructed as to the board's purpose, but was simply directed to place it under the patient. (Hr'g Trans. 34, 38.) Pickral asserts, by contrast, that she did not direct Breeden to use the board but rather "told her why it was used" and said "she could use it if she wanted." (Pickral Dep. 36.) If Pickral's account is taken as accurate, then Breeden's use of the board was clearly discretionary; not only was she left alone to position Ms. Dowdy using the board, she was left to decide whether to use it at all. Whether the instructions were in the nature of a demand or a suggestion does not bear on the procedure's discretionary nature, given Breeden's inexperience, and hence will not defeat her grant of immunity.

## Conclusion

Even though Pickral's deposition testimony raises some factual disputes, the prior sovereign immunity analysis remains apt. As explained above, Breeden meets the requirements of all four *James* factors under either Pickral's or her own version of events. In light of the foregoing and consistent with this Court's September 25, 2009, opinion, Pickral must also be immune in her role as Breeden's supervisor. This Court's previous decisions sustaining Breeden's Plea in Bar and partially sustaining Pickral's Demurrer will not be disturbed, and Plaintiff's Motion to Reconsider is accordingly denied.